**No. 22-1822**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

LESLIE BOYER.,

*Plaintiff-Appellant*,

v.

UNITED STATES

*Defendant-Appellee.*

On Appeal from the United States Court
of Federal Claims
No. 20-CV-438-ZNS
Hon. Zachary N. Somers

# CORRECTED BRIEF OF THE NATIONAL WOMEN'S LAW CENTER AND 46 ADDITIONAL ORGANIZATIONS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

Phoebe Wolfe
Gaylynn Burroughs
Sunu P. Chandy
NATIONAL WOMEN'S LAW CENTER
11 DUPONT CIRCLE, NW, SUITE 800
WASHINGTON, DC 20036
(202) 588-5180

Debra D'Agostino
Janei Au
FEDERAL PRACTICE GROUP
1750 K ST NW, 9TH FLOOR
WASHINGTON, DC 20006
(202) 862-4360

*Counsel for the National Women's Law Center, et al., as Amici Curiae*

## ADDITIONAL *AMICI CURIAE*

1. A Better Balance
2. American Medical Women's Association
3. California Women Lawyers
4. California Women's Law Center
5. Center for Women's Health & Human Rights, Suffolk University
6. Chicago Foundation for Women
7. Clearinghouse on Women's Issues
8. Desiree Alliance
9. Equal Rights Advocates
10. Faith Action for All
11. Feminist Majority Foundation
12. Hadassah, the Women's Zionist Organization of America
13. Human Rights Campaign
14. If/When/How: Lawyering for Reproductive Justice
15. In Our Own Voice: National Black Women's Reproductive Justice Agenda
16. In the Public Interest
17. Indiana Community Action Poverty Institute
18. International Action Network for Gender Equity & Law
19. Lawyers Club of San Diego
20. Legal Aid at Work
21. Legal Momentum, The Women's Legal Defense and Education Fund
22. NARAL Pro-Choice America
23. National Asian Pacific American Women's Forum (NAPAWF)
24. National Association of Women Lawyers

25. National Coalition on Black Civic Participation
26. National Consumers League
27. National Crittenton
28. National Employment Lawyers Association
29. National Health Care for the Homeless Council
30. National LGBTQ Task Force
31. National Women’s Political Caucus
32. Queen's Bench Bar Association of the San Francisco Bay Area
33. Religious Coalition for Reproductive Choice
34. Reproaction
35. Service Employees International Union
36. Shriver Center on Poverty Law
37. SisterReach
38. The Women's Law Center of Maryland
39. Washington Lawyers' Committee for Civil Rights and Urban Affairs
40. Women Employed
41. Women Lawyers On Guard Inc.
42. Women's Bar Association of the District of Columbia
43. Women's Bar Association of the State of New York
44. Women's Institute for Freedom of the Press
45. Women's Law Project
46. Women's Media Center

**FORM 9. Certificate of Interest** **Form 9 (p. 1)**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1822

**Short Case Caption** Boyer v. United States

**Filing Party/Entity** National Women's Law Center and 46 additional organizations

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/11/2022 Signature: /s/ Debra D'Agostino

Name: Debra D'Agostino

**FORM 9. Certificate of Interest**

**Form 9 (p. 2)**
**July 2020**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| A Better Balance | | |
| American Medical Women's Association | | |
| California Women Lawyers | | |
| California Women's Law Center | | |
| Center for Women's Health & Human Rights, Suffolk University | | |
| Chicago Foundation for Women | | |
| Clearinghouse on Women's Issues | | |
| Desiree Alliance | | |
| Equal Rights Advocates | | |
| Faith Action for All | | |
| Feminist Majority Foundation | | |
| Hadassah, the Women's Zionist Organization of America | | |

☑ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Human Rights Campaign | | |
| If/When/How: Lawyering for Reproductive Justice | | |
| In Our Own Voice: National Black Women's Reproductive Justice Agenda | | |
| In the Public Interest | | |
| Indiana Community Action Poverty Institute | | |
| International Action Network for Gender Equity & Law | | |
| Lawyers Club of San Diego | | |
| Legal Aid at Work | | |
| Legal Momentum, The Women's Legal Defense and Education Fund | | |
| NARAL Pro-Choice America | | |
| National Asian Pacific American Women's Forum (NAPAWF) | | |
| National Association of Women Lawyers | | |

☑ Additional pages attached

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| National Coalition on Black Civic Participation | | |
| National Consumers League | | |
| National Crittenton | | |
| National Employment Lawyers Association | | |
| National Health Care for the Homeless Council | | |
| National LGBTQ Task Force | | |
| National Women's Law Center | | |
| National Women’s Political Caucus | | |
| Queen's Bench Bar Association of the San Francisco Bay Area | | |
| Religious Coalition for Reproductive Choice | | |
| Reproaction | | |
| Service Employees International Union | | |

☑ Additional pages attached

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Shriver Center on Poverty Law | | |
| SisterReach | | |
| The Women's Law Center of Maryland | | |
| Washington Lawyers' Committee for Civil Rights and Urban Affairs | | |
| Women Employed | | |
| Women Lawyers On Guard Inc. | | |
| Women's Bar Association of the District of Columbia | | |
| Women's Bar Association of the State of New York | | |
| Women's Institute for Freedom of the Press | | |
| Women's Law Project | | |
| Women's Media Center | | |

☐ Additional pages attached

# TABLE OF CONTENTS

**ADDITIONAL *AMICI CURIAE*......................................................................i**

**CERTIFICATE OF INTEREST ...................................................................... iii**

**TABLE OF CONTENTS...............................................................................ix**

**TABLE OF AUTHORITIES.............................................................................x**

**STATEMENT OF INTEREST OF *AMICI CURIAE* .........................................1**

**INTRODUCTION..............................................................................................2**

I. RELIANCE ON SALARY HISTORY IN SETTING PAY PERPETUATES THE GENDER WAGE GAP.........................................................................6

II. THE EQUAL PAY ACT DOES NOT ALLOW EMPLOYERS TO USE PRIOR SALARY AS A DEFENSE TO SEX-BASED PAY INEQUITY...14

III. NONE OF THE RELEVANT FEDERAL STATUTES, REGULATIONS, OR GUIDANCE DOCUMENTS EXEMPT THE AGENCY FROM THE EQUAL PAY ACT. ...........................................................................21

A. Neither Title 38 Nor the VA Handbook Allow the Agency to Solely Rely on Prior Salary to Set Pay in Violation of the EPA. ..................24

B. Neither Title 5 Nor OPM Regulations Allow the Agency to Solely Rely on Prior Salary in Violation of the EPA.....................................27

**CONCLUSION.................................................................................................29**

**CERTIFICATE OF COMPLIANCE..............................................................xiv**

# TABLE OF AUTHORITIES

## Cases

*Aldrich v. Randolph Ctr. Sch. Dist.*,
963 F.2d 520(2d Cir. 1992) ........................................................................16

*Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 3884 v. Fed. Lab. Rels. Auth.*,
930 F.2d 1315 (8th Cir. 1991) ....................................................................23

*Angrove v. Williams-Sonoma, Inc.*,
70 Fed. Appx. 500 (10th Cir. 2003) ............................................................16

*Balmer v. HCA, Inc.*,
423 F.3d 606(6th Cir. 2005) ........................................................................17

*Boyer v. U.S.*,
159 Fed. Cl. 387(2022) ..................................................................................4

*Boyer v. Wilkie*,
No. 2:19-cv-00552-JEO (N.D. Ala., filed Apr. 11, 2019) ...............................4

*Boyer v. Wilkie*,
No. 2:19-cv-00552-JEO, 2020 WL 733181 (N.D. Ala., Feb. 13, 2020) ...............4

*Corning Glass Works v. Brennan*,
417 U.S. 188 (1974) ......................................................................................14

*Devon H. v. Dep't of Homeland Sec.*,
EEOC Appeal No. 2020004286 (Oct. 6, 2021) ..............................................20

*Drum v. Leeson Elec. Corp.*,
565 F.3d 1071 (8th Cir. 2009) ......................................................................16

*Ellison v. U.S.*,
25 Cl. Ct. 481 (1992) ....................................................................................18

*Glenn v. General Motors Corp.*,
841 F.2d 1567 (11th Cir. 1988) .............................................................17, 18

*Greater Phila. Chamber of Commerce v. City of Phila.*,
949 F.3d 116 (3rd Cir. 2020) ........................................................................17

*Grumbine v. U.S.*,
586 F. Supp. 1144 (D.D.C. 1984)....................22

*Irby v. Bittick*,
44 F.3d 949 (11th Cir. 1995)....................17, 18

*Irby v. Bittick*,
830 F.Supp. 632 (M.D. Ga. 1993) (11th Cir. 1995)....................20

*Isidro A. v. Dep't of Homeland Sec.*,
EEOC Appeal No. 0720170026 (Feb. 6, 2018)....................19

*Mansfield v. U.S.*,
71 Fed. Cl. 687 (2006)....................4, 29

*Margeret M. v. Dep't of Veterans Affairs*,
EEOC Appeal No. 0120170362 (Feb. 21, 2019)....................20

Moorehead v. U.S.,
84 Fed. Cl. 745 (2008)....................18

*Riser v. QEP Energy*,
776 F.3d 1191 (10th Cir. 2015)....................16

*Rizo v. Yovino*,
950 F.3d 1217 (9th Cir. 2020)....................15, 16

*See Parker v. Burnley*,
693 F. Supp. 1150 (N.D. Ga., July 12, 1988)....................26

**<u>Statutes</u>**

38 U.S.C. § 7401(3)....................3, 23, 24
38 U.S.C. § 7408....................23
5 U.S.C. § 5301....................28
5 U.S.C. § 5301(2)....................28
5 U.S.C. § 5333....................23, 27
Classification Act of 1949....................22, 28
Equal Pay Act....................3, 4, 5, 6, 14, 26

**Other Authorities**

Amanda Barroso & Anna Brown, *Gender Pay Gap in U.S. Held Steady in 2020*, Pew Research Ctr. (May 25, 2021) ....................8

Ariane Hegewisch & Eve Mefferd, *The Gender Wage Gap by Occupation, Race, and Ethnicity 2020*, Inst. for Women's Policy Research (Mar. 2021) ....................9

Dep't of Veterans Affairs Handbook 5007 ....................24, 25, 26

Human Rights Campaign, *The LGBTQ+ Women's Wage Gap in the United States* (June 12, 2022) ....................10

James Bessen et al., *Perpetuating Inequality: What Salary History Bans Reveal About Wages* (June 2020) ....................8, 13

Jasmine Tucker, *It's Time to Pay Black Women What They're Owed*, Nat'l Women's L. Ctr. (Sept. 2022) ....................10

Jasmine Tucker, *Some Asian American, Native Hawaiian, and Pacific Islander Women Lose Over $1 Million Over a Lifetime to the Racist and Sexist Wage Gap*, Nat'l Women's L. Ctr. (May 2022) ....................9

Jennifer Safstrom, *Salary History and Pay Parity: Assessing Prior Salary History as a "Factor Other Than Sex" in Equal Pay Act Litigation*, 31 Yale J.L. & Feminism 135 (2019) ....................7

Joe Davidson, *How Big Is the Federal Workforce? Much Bigger Than You Think*, Wash. Post (Oct. 3, 2017) ....................11

Nat'l Women's Law Ctr., *Asking for Salary History Perpetuates Pay Discrimination from Job to Job* (Mar. 2022) ....................7, 10

Nat'l Women's Law Ctr., *FAQ About the Wage Gap* (Sept. 2021) ....................9

Nat'l Women's Law Ctr., *NWLC Resources on Poverty, Income, and Health Insurance in 2021* (Sept. 13, 2022) ....................8, 9

Nat'l Women's Law Ctr., *The Lifetime Wage Gap* (Mar. 16, 2021) ....................10

Office of Personnel Management, *Goal 1: Position the federal government as a model employer* ....................18

P'ship for Pub. Serv., *A Revealing Look at Racial Diversity in the Federal Government* (Aug. 26, 2021)........................................................................12

Robin Bleiweis, *Why Salary History Bans Matter to Securing Equal Pay*, Center for American Progress (Mar. 24, 2021) ...............................................................7, 8

*Salary History Bans: A Running List of States and Localities That Have Outlawed Pay History Questions*, HRDive (Feb. 3, 2022).....................................................13

The White House, *Executive Order on Diversity, Equity, Inclusion, and Accessibility in the Federal Workforce* (June 25, 2021..........................................12

Torie Abbott Watkins, *The Ghost of Salary Past: Why Salary History Inquiries Perpetuate the Gender Pay Gap and Should be Ousted as a Factor Other than Sex*, 103 Minn. L. Rev. 1041 (2018).......................................................................6

U.S. Bureau of Labor Statistics, BLS Reports, *Women in the Labor Force: A Databook* (March 2022) ..........................................................................8

U.S. Bureau of Labor Statistics, *Labor Force Statistics from the Current Population Survey* ...........................................................................9

U.S. Equal Emp't Opportunity Comm'n Office of Federal Operations, *In Pursuit of Pay Equity: Examining Barriers to Equal Pay, Intersectional Discrimination Theory, and Recent Pay Equity Initiatives* (Nov. 2021).........................................21

U.S. Equal Emp't Opportunity Comm'n, Compliance Manual: *Section 10 Compensation Discrimination* (Dec. 5, 2000).......................................................19

U.S. Equal Emp't Opportunity Comm'n, *EEOC Women's Work Group Report* ...12

U.S. Equal Emp't Opportunity Comm'n, *EEOC/OPM Memorandum: Equal Pay in the Federal Government*........................................................................21

U.S. Merit Sys. Protection Bd., *Women in the Federal Government: Ambitions and Achievements* (May 2011).........................................................................11

**Regulations**

5 C.F.R. § 531.212 ........................................................................27, 28

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

The National Women's Law Center ("NWLC") is a non-profit legal advocacy organization that fights for gender justice—in the courts, in public policy, and in our society—working across issues that are central to the lives of women and girls—especially women of color, LGBTQ people, and low-income women and families. Since 1972, NWLC has worked to advance workplace justice, income security, educational opportunities, and health and reproductive rights. NWLC has participated as counsel or *amicus curiae* in cases before the Supreme Court and the federal Courts of Appeals to secure equal treatment and opportunity, including in cases addressing sex discrimination in the workplace, such as pay discrimination.

NWLC and the additional 46 *amici* have a strong interest in the proper judicial interpretation of the Equal Pay Act ("EPA") as part of our work to close gender, race, and other discriminatory wage gaps and to promote gender justice. Specifically, *amici* have an interest in ensuring that this Court interprets the EPA and the "factor other than sex" affirmative defense in a manner that effectuates the underlying purpose of the Act, which codifies the right to equal pay for equal work and prohibits sex-based wage disparities. As detailed herein, many courts have correctly concluded that relying on salary history to set salary, particularly when it is the sole

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amici curiae* and their counsel made a monetary contribution to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

factor considered, violates the EPA and is not a legitimate defense against sex-based pay disparities. *Amici* also file this brief to highlight the ways that relying on salary history perpetuates sex discrimination and the resulting harms faced by all women, with compounding effects for women of color. For these reasons, *amici* respectfully ask this Court to reverse the trial court's grant of summary judgment for the Agency and enter judgment in favor Dr. Leslie Boyer by granting her summary judgment motion or, alternatively, remanding the matter for trial.

## INTRODUCTION

Appellant Dr. Leslie Boyer, a woman, is a clinical pharmacist who was working for the Department of Veterans Affairs ("VA" or "Agency") when she discovered that the VA was paying a male coworker ("Male Comparator") with seven years less experience over $10,000 more for the same job. The VA hired Dr. Boyer in July 2015. Prior to her appointment, she worked in the private sector as a pharmacist since 1999, and as a pharmacy manager since 2007. During the hiring process, the Agency recommended appointing Dr. Boyer at General Schedule ("GS") Grade 12, Step 7, with a basic pay of $115,364—based solely on her prior salary, rather than considering her extensive experience in the field. The Veterans Integrated Service Networks Pharmacy Professional Standards Board approved the recommended salary.

Just six months later, when the VA hired the Male Comparator, the same decisionmakers decided on a higher step, GS-12, Step 10, and thus a higher salary, $126,223, for the Male Comparator, whom they knew had *seven years less experience* as a pharmacist than Dr. Boyer. The Agency indicated that this salary was based on the Male Comparator's pay at the time he applied, resulting in the sex-based pay disparity that continues to this day.

The Agency hired Dr. Boyer and the Male Comparator as pharmacists pursuant to 38 U.S.C. § 7401(3), which covers the appointment of medical professionals. VA Handbook 5005 guides the VA's hiring practices and implementation of Title 38. The undisputed facts, including sworn testimony, make clear that the Agency solely used Dr. Boyer's and the Male Comparator's prior salaries to set their pay, disregarding other factors required by the VA's Handbook and creating the very scenario the Equal Pay Act ("EPA") outlaws, *i.e.*, that an employer pays a female employee less than a male employee for the same work.

The Agency concedes that Dr. Boyer established a prima facie case under the EPA, but asserts an affirmative defense of a "factor other than sex." The VA argues that relying on an applicant's prior salary, even if no other factors are taken into consideration, is a gender-neutral policy that justifies sex-based pay inequities. Thus, this appeal turns on whether the Agency's sole reliance on prior salary, rather than job-related factors such as education and experience, constitutes "a factor other than

sex" such that the Agency may pay men and women unequally for the same job. The Agency's "burden to establish an affirmative defense under the EPA is a heavy one." *Mansfield v. U.S.*, 71 Fed. Cl. 687, 693 (2006).

By way of background, Dr. Boyer first filed her EPA claim in the Northern District of Alabama. *Boyer v. Wilkie*, No. 2:19-cv-00552-JEO (N.D. Ala., filed Apr. 11, 2019). The district court granted summary judgment for Dr. Boyer, finding that "the record establishes that prior salary alone was the reason for [Dr.] Boyer [and the Male Comparator's] salaries and such a justification cannot solely carry the affirmative defense." *Id.*, Doc. 16 at 10 (citations omitted). Remarkably, after Dr. Boyer *won*, the district court then decided that it lacked subject matter jurisdiction, vacated the summary judgment decision, and transferred the case to the Court of Federal Claims (the "trial court"). *Boyer v. Wilkie*, No. 2:19-cv-00552-JEO, 2020 WL 733181, at *2 (N.D. Ala., Feb. 13, 2020). In March 2022, the Court of Federal Claims decided that the Agency had not violated the EPA, granted its motion for summary judgment, and denied Dr. Boyer's summary judgment motion. *Boyer v. U.S.*, 159 Fed. Cl. 387, 413-14 (2022). Dr. Boyer appealed the trial court's decision, which is now before this Court.

*Amici* urge the Court to reverse the trial court's grant of summary judgment for the Agency and enter judgment for Appellant, holding that reliance on prior salary is not a legitimate defense to pay disparities under the EPA. As *amici* explain,

salary history is not a gender-neutral factor because it perpetuates the wage gap and undermines the purpose and text of the EPA. In the alternative, if the Court is not prepared to fully prohibit salary history as an affirmative defense under the EPA, *amici* seek a ruling that employers cannot cite to salary history *alone* in defending against pay disparities.

## **ARGUMENT**

The trial court erred in granting summary judgment for the Agency on Dr. Boyer's Equal Pay Act claim by failing to consider the ways that reliance on salary history in setting pay perpetuates sex-based discrimination in the form of lower wages for women. As discussed in Section I, allowing this practice results in significant impacts on women's lifetime earnings, especially for women of color. Social science research confirms that a candidate's prior salary is not an objective measure of job-related qualifications, but simply perpetuates systemic inequality.

Relying on salary history, as explained in Section II, results in the sex-based wage disparities that the EPA was enacted to combat. The trial court disregarded the decisions of several federal circuit courts and the Equal Employment Opportunity Commission ("EEOC") and ignored the context and purpose of the relevant statutes, including the EPA. Many circuit courts and the EEOC prohibit or limit employers, including the federal government, from relying solely on a candidate's salary history

in pay-setting, reasoning that the EPA cannot be read to permit defenses that maintain sex-based pay disparities without furthering a job-related purpose.

Finally, as discussed in Section III, nothing in the federal appointment or pay-setting authorities creates an exemption for the Agency from the requirements of the EPA. For the reasons detailed in Section III.A., none of the applicable provisions justify sex-based pay disparities. And, as explained in Section III.B, even under the inapplicable authorities that the trial court invoked, the decision must still be reversed based on the broader context of the cited provisions and the equal pay principles Congress has required agencies to follow in setting pay.

## I. RELIANCE ON SALARY HISTORY IN SETTING PAY PERPETUATES THE GENDER WAGE GAP.

Allowing employers to set pay rates based on prior salary rather than legitimate, job-related factors, such as experience and education, perpetuates sex-based pay disparities because women are typically paid less than male counterparts for equal work and are thus more likely to have lower prior salaries. "[I]n practice, salary history inquiries . . . continu[e] a chain of unequal pay for equal work."[2] This practice "forces women and, especially women of color, to carry lower earnings and

[2] Torie Abbott Watkins, *The Ghost of Salary Past: Why Salary History Inquiries Perpetuate the Gender Pay Gap and Should be Ousted as a Factor Other than Sex*, 103 Minn. L. Rev. 1041, 1041 (2018).

pay discrimination with them from job to job,"[3] and "perpetuates historical discrimination."[4]

Prior salary is not an accurate measure of a worker's qualifications or ability to perform a job. Using salary history to "evaluate and compare applicants' job responsibilities and achievements . . . assumes that prior salaries are an accurate measure of an applicant's experience and achievement, and not the product of discrimination, bias, or other factors that are simply irrelevant to the employer's business."[5] Past earnings may be deflated due to myriad circumstances, often with gender-based implications, including: workplace discrimination; working fewer hours due to caregiving responsibilities; being laid off; or working in women-dominated occupations or sectors that experience lower wages industry-wide.[6] Lower past earnings may also reflect employer-specific variations in pay that are disconnected from an individual's qualifications, productivity, or performance.

---

[3] Nat'l Women's Law Ctr., *Asking for Salary History Perpetuates Pay Discrimination from Job to Job*, 1 (Mar. 2022), https://nwlc.org/wp-content/uploads/2020/12/Asking-for-Salary-History-2022.pdf [hereinafter *Asking for Salary History*].

[4] Jennifer Safstrom, *Salary History and Pay Parity: Assessing Prior Salary History as a "Factor Other Than Sex" in Equal Pay Act Litigation*, 31 Yale J.L. & Feminism 135, 139 (2019), https://openyls.law.yale.edu/bitstream/handle/20.500.13051/7122/Full_Issue_2019.pdf?sequence=2&isAllowed=y.

[5] *Asking for Salary History*, supra note 3, at 2.

[6] *See id.* at 2; Robin Bleiweis, *Why Salary History Bans Matter to Securing Equal Pay*, Center for American Progress (Mar. 24, 2021), https://www.americanprogress.org/article/salary-history-bans-matter-securing-equal-pay/.

Considering salary history in setting pay therefore "appears to perpetuate the effects of past discrimination or other group inequities"[7] and "represents a structural practice that can…perpetuate lower earnings for women and workers of color."[8]

The use of salary history in setting pay is one major reason why the gender wage gap has hardly narrowed over the last 15 years.[9] According to the Bureau of Labor Statistics, women make up the majority of "all workers employed in management, professional, and related occupations," and fill over half of the positions requiring higher education.[10] Despite this, women working full time, year round were paid just 84 cents for every dollar paid to men in 2021.[11] In healthcare and technical occupations, women's median earnings are only 80.3 percent of men's,

---

[7] James Bessen et al., *Perpetuating Inequality: What Salary History Bans Reveal About Wages* 27 (June 2020), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3628729.

[8] Bleiweis, *Why Salary History Bans Matter to Securing Equal Pay*, supra note 6.

[9] Amanda Barroso & Anna Brown, *Gender Pay Gap in U.S. Held Steady in 2020*, Pew Research Ctr. (May 25, 2021), https://www.pewresearch.org/fact-tank/2021/05/25/gender-pay-gap-facts/.

[10] U.S. Bureau of Labor Statistics, BLS Reports, *Women in the Labor Force: A Databook* (March 2022), https://www.bls.gov/opub/reports/womens-databook/2021/home.htm.

[11] Nat'l Women's Law Ctr., *NWLC Resources on Poverty, Income, and Health Insurance in 2021* (Sept. 13, 2022), https://nwlc.org/resource/nwlc-resources-on-poverty-income-and-health-insurance/ [hereinafter *2021 Wage Gap Data*]

and median earnings for women in managerial and senior executive positions constitute only 76.5 percent of men's earnings.[12]

The wage gap occurs at all education levels, after work experience is taken into account, and remarkably worsens as women's careers progress.[13] For many women of color, the disparities are even larger, with race and ethnicity compounding the gender wage gap.[14] When comparing full-time, year-round workers, for every dollar paid to white, non-Hispanic men, Latina women typically make just 57 cents, Black women only 67 cents,[15] and Asian American, Native Hawaiian, and Pacific Islander (AANHPI) women just 95 cents.[16] Notably, figures for AANHPI women vary widely by community; for example, Burmese women make just 50 cents for every dollar paid to white, non-Hispanic men.[17] While government sources do not collect wage gap data by sexual orientation or gender identity, studies indicate

---

[12] U.S. Bureau of Labor Statistics, *Labor Force Statistics from the Current Population Survey*, https://www.bls.gov/cps/cpsaat39.htm (last visited Sept. 16, 2022) (NWLC calculations).

[13] Nat'l Women's Law Ctr., *FAQ About the Wage Gap* 2 (Sept. 2021), https://nwlc.org/wp-content/uploads/2021/11/2021-FAQ-Wage-Gap.pdf [hereinafter *FAQ About the Wage Gap*]

[14] Ariane Hegewisch & Eve Mefferd, *The Gender Wage Gap by Occupation, Race, and Ethnicity 2020*, Inst. for Women's Policy Research (Mar. 2021), https://iwpr.org/wp-content/uploads/2021/03/2021-Occupational-Wage-Gap-Brief-v2.pdf.

[15] *2021 Wage Gap Data*, *supra* note 11.

[16] Jasmine Tucker, *Some Asian American, Native Hawaiian, and Pacific Islander Women Lose Over $1 Million Over a Lifetime to the Racist and Sexist Wage Gap*, Nat'l Women's L. Ctr. (May 2022), https://nwlc.org/wp-content/uploads/2022/05/AANHPI-EPD.pdf.

[17] *Id.*

LGBTQ+ women are also affected by wage inequity, earning only about 79 cents for every dollar paid to full-time working men, with larger gaps for bisexual women and Black and Latina LGBTQ+ women.[18] Persistent inequality in pay translates into lower lifetime earnings for women, less income for families, and higher rates of poverty. If current wage gaps do not close, a woman beginning her career today working full-time year-round will lose $406,280 over a 40-year career.[19] For Black women working full time, the wage gap causes a staggering loss of $907,680 over a 40-year career.[20]

Employers' reliance on salary history to set pay continues to be one factor driving this persistent sex-based wage gap. In a recent study, nearly two-thirds of employers who conducted pay equity audits found that relying on applicants' salary history was a key driver of gender wage gaps within their companies.[21] In sum, because women are systematically paid less than men across occupations and

---

[18] Human Rights Campaign, *The LGBTQ+ Women's Wage Gap in the United States* (June 12, 2022), https://www.hrc.org/resources/lgbtq-womens-wage-gap.

[19] Nat'l Women's Law Ctr., *The Lifetime Wage Gap, State by State* (Mar. 16, 2021), https://nwlc.org/resource/the-lifetime-wage-gap-state-by-state/.

[20] Jasmine Tucker, *It's Time to Pay Black Women What They're Owed*, Nat'l Women's L. Ctr. 1 (Sept. 2022), https://nwlc.org/wp-content/uploads/2022/09/BWEPD-9.14.22-v2.pdf.

[21] *Asking for Salary History*, supra note 3, at 2 (citing Harvard Business Review Analytic Services, *Navigating the Growing Pay Equity Movement, What Employers Need to Know About What to Do* 5 (2019)).

industries, employers who rely on salary history to set pay perpetuate sex-based disparities.

The federal government—the nation's largest employer, with an estimated 7 to 9 million employees[22]—is certainly not immune from sex discrimination in its workforce. Despite the federal government's "longstanding emphasis on fair treatment and internal equity," the Government Accountability Office has confirmed the continued existence of a sex-based wage gap that "cannot be fully explained by differences in measurable factors such as experience and education."[23] In a comprehensive report on gender equity, the U.S. Merit Systems Protection Board found that within the federal government, women continue to be less likely than men to be employed in high-paying occupations and supervisory positions.[24] Stark racial disparities also exist within the federal workforce, with people of color representing

---

[22] Joe Davidson, *How Big Is the Federal Workforce? Much Bigger Than You Think*, Wash. Post (Oct. 3, 2017), https://www.washingtonpost.com/news/powerpost/wp/2017/10/03/how-big-is-the-federal-workforce-much-bigger-than-you-think/.

[23] U.S. Merit Sys. Protection Bd., *Women in the Federal Government: Ambitions and Achievements* 54 (May 2011), https://www.mspb.gov/studies/studies/Women_in_the_Federal_Government_Ambitions_and_Achievements_606214.pdf.

[24] *Id. See also EEOC Women's Work Group Report*, *https://www.eeoc.gov/federal-sector/reports/eeoc-womens-work-group-report* ("Women and men do not earn the same average salary in the federal government.").

47 percent of all full-time entry-level employees but only 33 percent of senior-level positions.[25]

The wage gap has substantial impacts on women in the federal workforce, particularly when "federal employees are faced with increased financial challenges, stagnant federal wages, and furloughs."[26] Moreover, "the District of Columbia, which houses a large portion of federal workers, has the highest share of 'breadwinner mothers,' with 63.8 percent of mothers in working families bringing home at least half of their family's earnings."[27] Particularly given the federal government's stated goal to be a "model employer,"[28] it is imperative that government agencies implement and follow policies to ensure greater pay equity for

---

[25] P'ship for Pub. Serv., *A Revealing Look at Racial Diversity in the Federal Government* (Aug. 26, 2021), https://ourpublicservice.org/blog/a-revealing-look-at-racial-diversity-in-the-federal-government/.

[26] U.S. Equal Emp't Opportunity Comm'n, *EEOC Women's Work Group Report*, https://www.eeoc.gov/federal-sector/reports/eeoc-womens-work-group-report (last visited Sept. 29, 2022).

[27] *Id.* (citing Heather Boushey, Jessica Arons, Lauren Smith, *Families Can't Afford the Gender Wage Gap: Equal Pay Day 2010*, Center for American Progress (April 20, 2010), http://www.americanprogress.org/article/families-can't-afford-the-gender-wage-gap/.).

[28] The White House, *Executive Order on Diversity, Equity, Inclusion, and Accessibility in the Federal Workforce* (June 25, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/06/25/executive-order-on-diversity-equity-inclusion-and-accessibility-in-the-federal-workforce/ ("As the Nation's largest employer, the Federal Government must be a model for diversity, equity, inclusion, and accessibility, where all employees are treated with dignity and respect.").

the millions of women it employs, and for others who face discriminatory wage disparities.

Recognizing the ways that reliance on prior salary perpetuates the gender wage gap, many states and localities have enacted laws prohibiting employers from asking for salary history or relying on it in setting pay. More than 40 jurisdictions explicitly prohibit employers from asking about or relying on candidates' pay history when making salary decisions, or otherwise limit employers' reliance on salary history.[29] Research indicates that these new bans have a positive outcome for addressing sex-based pay inequity and result in a significant increase in the pay of workers who change jobs, with the largest increases seen for women (8%) and African American employees (13%).[30] Given the ways that reliance on salary history perpetuates pay inequity, allowing employers, especially the federal government, to use this defense to evade liability would be at cross-purposes with the EPA, which was enacted to eradicate sex-based pay inequity.

---

[29] *See Salary History Bans: A Running List of States and Localities That Have Outlawed Pay History Questions*, HRDive (Feb. 3, 2022), https://www.hrdive.com/news/salary-history-ban-states-list/516662/.

[30] *See* James Bessen et al., supra note 7. *See also* U.S. Equal Emp't Opportunity Comm'n, *In Pursuit of Pay Equity: Examining Barriers to Equal Pay, Intersectional Discrimination Theory, and Recent Pay Equity Initiatives* (Nov. 2021), https://www.eeoc.gov/es/node/134097#_ftn111 (citing H.R.Rep. No. 117-13 (2021)).

## II. THE EQUAL PAY ACT DOES NOT ALLOW EMPLOYERS TO USE PRIOR SALARY AS A DEFENSE TO SEX-BASED PAY INEQUITY.

Given the documented ways that using salary history in pay-setting perpetuates inequality based on sex, it would be inconsistent with the EPA to allow employers to rely on prior salary to defend against pay disparities. "The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974). Put simply, the EPA requires employers to pay women and men equally for equal work. 29 U.S.C. § 206 (d)(1). As set forth herein, the EPA would be undermined unless this Court rejects the VA's use of prior salary to justify paying a woman less than a male counterpart doing the same job, particularly when, as here, the VA used prior salary as the sole factor in setting pay.

Prior salary cannot constitute a "factor other than sex" to justify a wage differential, because without some correlation to a job-related factor or attribute to explain it, the lower prior salary is likely to perpetuate lower pay for women without reflecting any difference in qualifications, productivity, performance, or the like, as detailed in Section I. This precludes salary history from being a legitimate justification to pay women and men differently for the same job under the EPA because "allowing prior pay to serve as an affirmative defense would frustrate the EPA's purpose as well as its language and structure by perpetuating sex-based wage

disparities." *Rizo v. Yovino*, 950 F.3d 1217, 1228 (9th Cir. 2020). For this reason, the Court should prohibit employers from relying on salary history to defend against EPA violations or, in the alternative, join the several circuits that have sharply limited the "factor other than sex" defense in order to avoid perpetuating the problems the EPA was enacted to remedy.

In *Rizo v. Yovino*, the Ninth Circuit was presented with facts strikingly similar to those in this case. 950 F.3d at 1217. Rizo, a Fresno County math consultant, discovered that she was hired at a starting salary significantly lower than that of her male colleagues who had less education and experience. In defending the pay disparity, the county pointed to its pay schedule, which set employees' step levels and salaries based on their prior wages, and argued that the policy was a "factor other than sex" constituting an affirmative defense under the EPA. In rejecting this argument, the court held that "the text of the [Equal Pay] Act and canons of construction, and the EPA's history and clear purpose, all point to the conclusion that the ["factor other than sex"] exception is limited to job-related factors only." *Id.* at 1227.

The *Rizo* court recognized that "the use of prior pay to set prospective wages, by its nature, would perpetuate the gender-based pay gap indefinitely," undermining Congress's goal of eliminating "deeply rooted pay discrimination between male and female employees who perform the same work." 950 F.3d 1217, 1222 (9th Cir.

2020). "Because prior pay may carry with it the effects of sex-based pay discrimination, and because sex-based pay discrimination was the precise target of the EPA" the Ninth Circuit concluded that "an employer may not rely on prior pay to meet its burden of showing that sex played no part in its pay decision." *Id.* at 1229.

Similarly, the Second, Eighth, Tenth, and Eleventh Circuits have all significantly limited the use of salary history as an affirmative defense under the EPA to ensure that existing sex discrimination is not perpetuated. *See e.g.*, *Aldrich v. Randolph Ctr. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992) ("[J]ob classification systems may qualify under the factor-other-than-sex defense only when they are based on legitimate business-related considerations" and when they comport "with the general policy goals Congress sought to effectuate by enacting equal pay legislation"); *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1073 (8th Cir. 2009) ("When prior salary is asserted as a defense to a claim of unequal pay, this court carefully examines the record to ensure that an employer does not rely on the prohibited 'market force theory' to justify lower wages for female employees simply because the market might bear such wages."); *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015) (rejecting QEP's argument that basing the Male Comparator's salary on his prior salary and rejection of their initial offer constituted factors other than sex); *Angrove v. Williams-Sonoma, Inc.*, 70 Fed. Appx. 500, 508 (10th Cir. 2003) (unpublished) (holding the EPA "precludes an employer from relying solely

upon a prior salary to justify pay disparity.”); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) (rejecting affirmative defense that prior salary alone could justify pay disparity); *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (“[A]n Equal Pay Act defendant may successfully raise the affirmative defense of ‘any other factor other than sex’ if he proves that he relied on prior salary *and* experience in setting a ‘new’ employee’s salary.”). This Court should follow the lead of these circuits, which have recognized the need to limit the salary history defense given the ways that it perpetuates sex discrimination.

Other federal circuit courts have opined on the troubling outcomes that result when relying on salary history in setting pay. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116 (3rd Cir. 2020) (“[C]riteria that may at first appear to be race and gender neutral (such as wage history) may be proxies for race or gender.”) (citing *Rizo*); *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005) (“Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity.”).

The Court of Federal Claims has even recognized the problematic nature of using salary history alone to set pay. For example, in *Moorehead v. U.S.*, the Court of Federal Claims stated:

> [T]he justifications of higher prior salary and the so-called ‘market force theory’—any policy based on offering salaries said to be necessary to induce the candidate to accept the employment—have been singled out by many courts…as requiring additional scrutiny

> because of ***the tendency of these policies to simply perpetuate the trend of paying women less for the same work***.

84 Fed. Cl. 745, 749 (2008) (emphasis added) (collecting cases and holding summary judgment was inappropriate given disagreement on material facts). *See also Ellison v. U.S.*, 25 Cl. Ct. 481, 487 (1992) ("A wage differential is justified only if it compensates for an appreciable variation in skill, effort, or responsibility between otherwise comparable job work activities.").

Notably, Dr. Boyer lives and works in the Eleventh Circuit, where she originally filed her case. Because the Eleventh Circuit explicitly prohibits setting pay based on salary history alone, *see Glenn*, 841 F.2d at 1571; *Irby*, 44 F.3d at 955, Dr. Boyer won her case before the decision was vacated and transferred to this Circuit. Being a federal worker should not result in Dr. Boyer having *weaker* civil rights protections than her neighbors working in the private sector, particularly when the federal government states that it intends to be a model employer.[31]

Prohibiting the use of salary history alone in setting pay is also consistent with the position of the EEOC—the agency charged with interpreting, administering, and enforcing federal civil rights laws such as the EPA, including through its federal employee administrative hearings process. In its Compliance Manual: *Section 10*

---

[31] See Office of Personnel Management, *Goal 1: Position the federal government as a model employer*, https://www.opm.gov/about-us/strategic-plan/goal-1-position-the-federal-government-as-a-model-employer/ (last visited Sept. 8, 2022) ("OPM strives for the federal government to be a model employer where every federal job provides fair pay and benefits that reflect the diverse needs of the workforce.").

*Compensation Discrimination* (Dec. 5, 2000) ("Compliance Manual"), the EEOC warns that "permitting prior salary alone as a justification for compensation disparity 'would swallow up the rule and inequality in compensation among genders would be perpetuated.'" *See* Compliance Manual at 45 (*quoting Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995)). "This is because," as described in Section I, *supra*, "prior salaries of job candidates can reflect sex-based compensation discrimination." Compliance Manual at 10-IV(F)(g) (citing *Irby*).

The EEOC has also underscored in federal sector decisions that agencies should rely on factors relating to job requirements, rather than prior salary, in setting pay. In *Isidro A. v. Dep't of Homeland Sec.*, a male federal employee alleged the Transportation Security Agency violated the EPA when it paid him less than female comparators. EEOC Appeal No. 0720170026, at 14 (Feb. 6, 2018). The EEOC held that to demonstrate a valid defense under the EPA, "an Agency must establish that a gender-neutral factor, applied consistently, in fact explains the compensation disparity," and show that "the factor is *related to job requirements* and used reasonably in light of the employer's stated business purpose as well as its other practices." *Id*. (emphasis added).

The Commission applied this same principle in *Margeret M. v. Dep't of Veterans Affairs*, rejecting the Agency's argument that differences in salaries were justified where it could not specify how relative experience was applied to salary

determinations. EEOC Appeal No. 0120170362, at 9 (Feb. 21, 2019). Citing to the EEOC Compliance manual, the Commission noted "the difference in education, experience, training, or ability must correspond to the compensation disparity," and recognized that reliance on factors such as past salary, becomes "less reasonable the longer the lower paid employee has performed at a level substantially equal to, or greater than, his or her counterpart." *Id; see also Devon H. v. Dep't of Homeland Sec.*, EEOC Appeal No. 2020004286, at 6 (Oct. 6, 2021) ("[C]ontinued reliance on pre-hiring qualifications is less reasonable the longer the lower paid employee has performed at a level substantially equal to, or greater than, his or her counterpart.").

Thus, several courts and the EEOC recognize that relying on salary history, particularly when it is the sole factor in setting pay, violates the EPA when it results in sex-based pay inequality. This practice perpetuates women's lower pay in the broader economy, is not a job-related reason for a pay disparity, and is thus not a "factor other than sex" justifying paying a woman less. *See Irby v. Bittick,* 830 F.Supp. 632, 636 (M.D. Ga. 1993), *aff'd,* 44 F.3d 949 (11th Cir. 1995) ("If prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated."). If this Court permits the trial court's decision to stand, agencies could choose to pay a male employee with 5 years' experience more than a female employee with 20 years' experience, for the same position, based *solely* on the fact that the male was paid more in past positions,

even if the female employee's lower pay was driven by sex discrimination or was disconnected from her past job performance and qualifications. This is a patently unjust outcome and incongruent with the EPA, most circuits courts, and the EEOC.

## III. NONE OF THE RELEVANT FEDERAL STATUTES, REGULATIONS, OR GUIDANCE DOCUMENTS EXEMPT THE AGENCY FROM THE EQUAL PAY ACT.

By using prior salary as the sole factor in setting Dr. Boyer's and the Male Comparator's pay, the Agency created the very scenario the EPA intended to outlaw—that an employer pays a female employee less than a male employee for the same work, without a job-related justification. Allowing the trial court's decision to stand would create a shockingly large carve-out from the EPA, leaving millions of federal employees with fewer workplace protections than private-sector employees, including ones who live side by side with them. Such a result would be antithetical to the federal government's role as "the model and largest employer" tasked with "continu[ing] to take the lead in implementing policies that lead to greater pay equity."[32] Fundamentally, the EPA "requires the federal government to pay men and women equal pay for equal work," [33] and nothing in the statutes,

[32] U.S. Equal Emp't Opportunity Comm'n Office of Federal Operations, *In Pursuit of Pay Equity: Examining Barriers to Equal Pay, Intersectional Discrimination Theory, and Recent Pay Equity Initiatives* (Nov. 2021), https://www.eeoc.gov/es/node/134097#_ftn108.

[33] U.S. Equal Emp't Opportunity Comm'n, *EEOC/OPM Memorandum: Equal Pay in the Federal Government* https://www.eeoc.gov/federal-sector/eeocopm-memorandum-equal-pay-federal-government.

regulations, or guidance that the Agency cites creates such a wide-ranging exemption from the EPA's requirements.

The equal pay principles underlying the federal government's policies can also be found in other relevant provisions. For instance, the Classification Act of 1949, 5 U.S.C. § 5101, which established the General Schedule classification standards used by executive agencies, explicitly codifies the rule that federal agencies shall follow "the principle of equal pay for substantially equal work," in determining an employee's rate of basic pay. 5 U.S.C. § 5101(1)(A). The Classification Act further requires that any "variations in rates of basic pay paid to different employees will be in proportion to substantial differences in the difficulty, responsibility, and qualification of the work performed and to the contributions of employees to efficiency and economy in the service." 5 U.S.C. § 5101(1)(B). *See Grumbine v. U.S.*, 586 F. Supp. 1144 (D.D.C. 1984) ("The principle of equal pay regardless of sex was adopted for federal employees…with the Classification Act of 1923…[and] was reaffirmed and broadened in the Classification Act of 1949 which remains in effect today."). The plain language Congress used to codify the equal pay principle in the Classification Act demonstrates that, contrary to the trial court's opinion, Congress has long been concerned with ensuring that the pay rates for government employees be applied equitably, with disparities caused only by job-related factors.

The trial court also incorrectly relied on § 5333 of Title 5 in deciding that Dr. Boyer's and the Male Comparator's pay could be determined solely based on prior pay. The Agency hired Dr. Boyer and the Male Comparator as pharmacists pursuant to 38 U.S.C. § 7401(3), which covers the appointment of medical professionals. While most federal employees are appointed pursuant to Title 5, Congress enacted Title 38's provisions relating to Agency personnel involved in patient care when it was concerned that the VA had been unable to attract qualified medical professionals under the civil service system's rates of pay. *See Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 3884 v. Fed. Lab. Rels. Auth.*, 930 F.2d 1315, 1318 (8th Cir. 1991) (citing Pub.L. No. 293, §§ 2–15; S.Rep. No. 858 (1945)). The trial court also erred in relying on 38 U.S.C. § 7408, which it admits "does not directly apply to the appointment of VA pharmacists," Op. at 33, and in fact contains an exemption for employees like Dr. Boyer and the Male Comparator who were hired pursuant to "paragraphs (1) and (3) of section 7401 of this title," 38 U.S.C. § 7408. Instead, Dr. Boyer's claims should have been evaluated under the applicable statute: 38 U.S.C. § 7401(3).

The trial court's error in applying Title 5 and 38 U.S.C. § 7408 instead of § 7401(3) is significant because the crux of the court's decision relied on a textual interpretation of statutes and implementing authorities that do not control in this case. However, even under the inapplicable statutes and regulations, the trial court's decision must still be reversed because nothing in these authorities allows agencies

to rely on salary history alone in a manner that violates equal pay principles Congress has required agencies to apply in setting employee pay.

### A. Neither Title 38 Nor the VA Handbook Allow the Agency to Solely Rely on Prior Salary to Set Pay in Violation of the EPA.

The applicable statute under which Dr. Boyer and the Male Comparator were appointed is 38 U.S.C. § 7401(3), which contains no authorization for the Agency to evaluate prior salary of candidates. As the trial court recognized, the VA "has set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks …" Op. at 33 n.15 (quoting *James v. Von Zemensky*, 284 F.3d 1310, 1318-19 (Fed. Cir. 2002)). The VA Handbook, which the decisionmakers purportedly relied on in setting pay for Dr. Boyer and the Male Comparator, is the applicable interpretive document. In relevant part, the VA Handbook provides that, "Employees appointed under 38 U.S.C. 7401(3) [like Dr. Boyer and her Male Comparator] will be paid from the General Schedule salary system." § 5007, Pt. II, Chpt. 2 (a)(1). Regarding the initial pay rate for "pharmacists who do not have prior VA or other Federal civilian service," the VA Handbook provides it "will be the minimum rate of the higher grade unless a higher rate is authorized using the authority for individual appointments above the minimum rate of the grade." *Id.* at (a)(7).

Before an agency may consider authorizing a higher rate of pay for an employee, the VA Handbook requires officials to consider a number of factors to ensure that pay rates are determined equitably:

> (2) ***Before using this pay setting authority***, approving officials should consider such things ***as the number of on-duty personnel in the category under consideration and their pay rates***, the number of vacancies and the availability of well-qualified candidates; possible ***employee and/or community relations problems which may result*** from using this authority and ***alternatives*** to using this authority to include the use of recruitment incentives, a more comprehensive recruitment effort, job redesign, internal training, use of part-time employees, etc.

VA Handbook 5007, Chapter 3 §3(b)(2) (emphasis added).

This section evinces the Agency's intent to ensure that salaries set pursuant to its pay-setting authority are set equitably, as compared to employees in the same job "and their pay rates." *Id.* Officials are directed to consider the consequences of their pay determinations, including the possibility of resulting "employee and/or community relations problems," which would undoubtedly result from significant sex-based salary disparities. *Id.* "[A]lternatives to using this authority" should also be considered according to the Handbook, likely because of the predictable problems that could result from variations in setting employees' pay. *Id.* Only in context of these considerations should the Agency move to the other pay-setting factors in the Handbook. *Id.* § 3(b)(1). Thus, the VA Handbook does not authorize officials to only consider prior salary, as they are directed to first consider the factors in § 3(b)(2).

The VA did not consider the prerequisites in the VA Handbook when setting Dr. Boyer's or the Male Comparator's pay. Even though the Male Comparator was hired a mere six months after Dr. Boyer and their pay was set by the same decisionmakers, the Agency failed to consider the inequities that would necessarily result from paying the Male Comparator over $10,000 more than Dr. Boyer. Instead, the Agency set their pay solely based on prior salary, resulting in the very harms that the VA Handbook §3(b)(2) factors are intended to avoid. Complying with the VA Handbook's implicit goal of avoiding pay inequity by not considering prior salary alone would have resulted in a salary determination that complied with the EPA.

This Court, contrary to the opinion below, is not required to find a conflict between the EPA and Title 38 or the VA Handbook. The laws can be read in harmony, as the EPA simply requires that the Agency carry out its pay-setting determinations in a way that avoids sex-based pay discrimination—a goal that can be achieved by following the VA Handbook's own guidelines that direct the Agency to consider comparable employees' salaries, employee dynamics, and alternative options. *Id.* §3(b)(2). Even if the VA Handbook is read to allow consideration of prior pay as one factor, therefore, it still must be considered in a manner that comports with the EPA. *See Parker v. Burnley*, 693 F. Supp. 1150 (N.D. Ga., July 12, 1988) ("The defendants' failure to show that the pay classification system was

applied in a nondiscriminatory manner is fatal to their case.") (citing *Grumbine v. U.S.*, 586 F. Supp. 1144 (D.D.C. 1984)).

### B. Neither Title 5 Nor OPM Regulations Allow the Agency to Solely Rely on Prior Salary in Violation of the EPA.

While this Court should not rely on § 5333 of Title 5 because the VA hired Dr. Boyer and Male Comparator pursuant to Title 38, the trial court's decision must still be reversed under Title 5 and the relevant Office of Personnel Management ("OPM") regulations. 5 U.S.C. § 5333 provides that, pursuant to OPM regulations, an agency may be permitted to set an employee's pay above the minimum rate of the appropriate grade for their position. The relevant OPM regulation, 5 C.F.R. § 531.212, sets out the "*Superior qualifications and special needs pay-setting authority*," which provides that an agency may set a candidate's pay above the minimum rate only after first determining that the candidate has "superior qualifications" or to meet a "special agency need." 5 C.F.R. § 531.212(b). Only after making this determination, which did not occur here, may the agency consider the factors provided in 5 C.F.R. § 531.212(c). Thus, while the regulation states that an agency "may consider one or more" of these factors, including the candidate's "existing salary, recent salary history, or salary documented in a competing job offer," this is only applicable in a set of facts that does not exist in this case. *Id.* Moreover, the regulation also provides that, in setting an employee's pay above the minimum rate, "an agency *must* consider the possibility of authorizing a recruitment

incentive under 5 CFR part 575, subpart A" as an alternative, which also did not occur here. 5 C.F.R. § 531.212(d) (emphasis added).

Neither Title 5 nor the implementing OPM regulation should be read to authorize agencies to set pay in a way that results in sex-based pay discrimination in violation of the EPA. Even if the VA had appointed Dr. Boyer pursuant to Title 5, the trial court failed to read 5 U.S.C. § 5333 in context of Title 5's overarching goals and limitations. Indeed, 5 U.S.C. § 5301 sets out the policy underlying the specific pay-setting authority the court cites and confirms Congress's unambiguous intent to ensure that the federal government is paying its employees "equal pay for substantially equal work within each local pay area," 5 U.S.C. § 5301(1), with any "pay distinctions…maintained in keeping with *work* and *performance* distinctions," 5 U.S.C. § 5301(2) (emphasis added). And as detailed above, the Classification Act of 1949, 5 U.S.C. § 5101, explicitly codifies "the principle of equal pay for substantially equal work." 5 U.S.C. § 5101(1)(A) and requires pay differentials to be tied directly to job-related factors, 5 U.S.C. § 5101(1)(B). These provisions of Title 5 provide vital context regarding Congress's clear intent to eliminate and avoid pay inequity within the federal government.

With these principles in mind, contrary to the trial court's decision, none of the statutes and regulations concerning the Agency's appointment and pay-setting authority allow employers to rely solely on salary history in determining wages,

especially when it causes significant sex-based pay discrimination like the disparity that existed—and *continues* to exist—here. The Agency has therefore failed to meet its "heavy" burden, *Mansfield*, 71 Fed. Cl. at 693, to prove that the disparity was caused by a "factor other than sex" under the EPA.

## CONCLUSION

For the foregoing reasons, *amici* join Appellant in urging this Court to reverse the trial court's order granting summary judgment to the Agency and enter judgment for Dr. Boyer by granting her motion for summary judgment or, in the alternative, remanding the matter for trial.

Dated: October 11, 2022

Respectfully submitted,

/s/ *Debra D'Agostino*

Phoebe Wolfe
Gaylynn Burroughs
Sunu P. Chandy
NATIONAL WOMEN'S LAW CENTER
11 DUPONT CIRCLE, NW, SUITE 800
WASHINGTON, DC 20036
(202) 588-5180

Debra D'Agostino
Janei Au
FEDERAL PRACTICE GROUP
1750 K ST NW, 9TH FLOOR
WASHINGTON, DC 20006
(202) 862-4360

*Counsel for the National Women's Law Center, et al., as Amici Curiae*

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

**Case Number** 2022-1822

**Short Case Caption** Boyer v. United States

**Filing Party/Entity** National Women's Law Center and 46 additional organizations

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,908 words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/11/2022

Signature: /s/ Debra D'Agostino

Name: Debra D'Agostino