**APPEAL NUMBER: 2022-1822**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**LESLIE BOYER,**

   **Plaintiff-Appellant,**

**v.**

**UNITED STATES,**

   **Defendant-Appellee.**

---

**ON APPEAL FROM THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

> **Jon C. Goldfarb**
> **L. William Smith**
> Wiggins, Childs, Pantazis, Fisher,
> & Goldfarb, LLC
> The Kress Building
> 301 North 19th Street
> Birmingham, Alabama 35203
> (205) 314-0500
> **Attorneys for Plaintiff-Appellant**

# **TABLE OF CONTENTS**

ARGUMENT……………………………………………………………………..1

I.    The EPA Does Not Repeal Federal Regulations; Rather, It
      Complements Them………………………………………………..2

II.   This Court Should Hold the Prior Pay Alone May Not Serve as an
      Affirmative Defense to EPA Liability………………………………..5

III.  The VA Handbook Requires Agencies to Consider Potential Negative
      Workplace Dynamics Such as Pay Disparities………………………8

IV.   The Timing of the Comparator's Hiring Is Irrelevant to the EPA
      Analysis…………………………………………………………………...10

V.    Disjunctive Language Further Emphasizes that Agencies Have the
      Discretion to Avoid Creating Pay Disparities………………………11

VI.   Existing Regulatory Frameworks Provide Agencies Flexibility to
      Consider Prior Pay In Setting Salaries While Also Complying With
      The EPA………………………………………………………………..12

VII.  The Court Should Reject Defendant's Arguments that the Agency
      Handbook May Serve as an "Other Factor Other than Sex" Because it
      is "Gender Neutral."………………………………………………12

VIII. The Trial Court Inappropriately Shifted the Burden of Proof to
      Plaintiff to Show International Discrimination………………………...17

IX.   The Agency Had the Ability to Take Into Account the Salaries of
      Current On-Duty Personnel, Including Plaintiff, When it Set the
      Salary of her Comparator…………………………………………18

CONCLUSION AND STATEMENT OF RELIEF SOUGHT…………………...19

# TABLE OF AUTHORITIES

*Brinkley v. Harbour Rec. Club,*
    180 F.3d 598, 613 (4th Cir. 1999)………………………………………………10

*Drum v. Leeson Elec. Corp.,*
    565 F.3d 1071, 1073 (8th Cir. 2009)……………………………………………16

*Glenn v. General Motors Corp.,*
    841 F.2d 1567, 1570, 1571 (11th Cir. 1988)…………………………...6-7, 9

*Irby v. Bittick,*
    44 F.3d 949, 955 (11th Cir. 1995)………………………………………………...7

*Lawrence v. CNF Transp., Inc.,*
    340 F.3d 486, 492 (8th Cir. 2003)……………………………………….…10

*Ledbetter v. Goodyear Tire & Rubber Co.,*
    550 U.S. 618, 640 (2007)……………………………………………..6, 18

*Mickelson v. N.Y. Life Ins. Co.,*
    460 F.3d 1304, 1312 (10th Cir. 2006)………………………………...14

*Miranda v. B & B Cash Grocery Store, Inc.,*
    975 F.2d 1518, 1533 (11th Cir. 1992)………………………………...5, 18

*North v. United States,*
    123 Fed. Cl. 457, 464 (2015)………………………………....…6, 12-13

*Pereira v. Kozlowski,*
    996 F.2d 723, 725 (4th Cir. 1993)………………………………………...2

*Riser v. QEP Energy,*
    776 F.3d 1191, 1198 (10th Cir. 2015)……………………………………….9

*Rizo v. Yovino,*
    950 F.3d, 1124, 1217, 1223, 1228, 1231 (9th Cir. 2020)………………5-7, 9

*Steger v. GE,*
    318 F.3d 1066, 1078 (11th Cir. 2003)………………………………...13

*United States EEOC v. Md. Ins. Admin.,*
    879 F.3d 114, 121 (4th Cir. 2018)…………………………………………17

*United States v. Zack,*
    375 U.S. 59, 67-8 (1963)……………………………………………………….2

## **STATUTES & OTHER:**

5 C.F.R. § 531.212(c)……………………………………………….......3-4, 13

5 U.S.C. §5333……………………………………………………2-5, 12-13

29 U.S.C.S. § 206…………………………………………………………18

29 U.S.C. § 206(d)(1)…………………………………………….4, 10, 18

38 U.S.C. §7401(3)………………………………………………………3

38 U.S.C. §7408(b)………………………………………………………2

Equal Pay Act……………………………………………1-7, 9-14, 17-19

Title VII…………………………………………………………..6, 17-18

VA Handbook……………………………………………1, 3, 8-9, 11-14

# **ARGUMENT**

The Agency concedes that Plaintiff has established a prima facie case under the Equal Pay Act. The agency also admits that it relied on the comparator's prior pay in setting his starting salary at a higher amount than it paid Plaintiff: Monica Sfakianos, the selecting official, testified, "...I boarded everybody exactly the same without regards to anything special other than their current pay stubs." (Appx260). Similarly, Kendra Brookshire, the Chair of the Board that recommended Plaintiff's comparator be hired at Step 10 and Plaintiff at Step 7, testified, "… at the end of the day pay stubs can basically trump what would be determined by the qualifying experience" and "if their pay stubs would justify a higher salary … relevant experience kind of just goes by the wayside." (Appx279, 281). The question before this Court is whether prior pay alone may stand as a "factor other than sex" sufficient to establish an affirmative defense to EPA liability in the federal sector.

The government focuses its argument on references to salary history in inapplicable regulations and on the VA Handbook. However, particularly in the context of the federal government, which has called itself a "model employer," these provisions must be harmonized with the text of the EPA and with its purpose of eliminating wage disparities between similarly situated male and female employees. Notably, the EPA does not address what factors employers may consider in setting initial pay. Rather, the EPA insists that employers may not pay male workers a

higher salary than similarly situated female workers for similar work. If an employer's pay setting decision gives rise to such a pay disparity, the employer may not justify the disparity by reference to prior pay alone. Thus, the EPA complements federal pay setting regulations and these provisions must be adhered to in concert; the issue of implied "repeal" is not presented here. This Court should reject the agency's invitation to carve out a gaping exception to the EPA, particularly for agencies of the U.S. government, the purported "model employer." Plaintiff requests that this Court reverse the judgment below and enter judgment for the plaintiff.

## I.   **The EPA Does Not Repeal Federal Regulations; Rather, It Complements Them.**

The agency erroneously argues that ruling in Plaintiff's favor would require finding that the Equal Pay Act "repealed", "partially repealed", or "implicitly repealed" federal pay-setting statutes such as 5 USC §5333 and 38 USC §7408(b) and their implementing regulations. This is incorrect. The federal government's pay setting statutes and implementing regulations and the EPA do not legislate on the "same subject" and are not inconsistent with each other. *See United States v. Zack*, 375 U.S. 59, 67-8 (1963) (quoting the prerequisite that there be "two acts upon the same subject" before proceeding to address the question of applied repeal and the avoidance canon); *Pereira v. Kozlowski*, 996 F.2d 723, 725 (4th Cir. 1993) (reasoning there is no potential "repeal" of one provision by another where, "rather than being inconsistent with each other, the two sections complement one another").

Rather, the EPA operates in tandem with the pay-setting statutes and mandates that the Agency may not rely on prior salary alone in defending a pay disparity that gives rise to a prima facie case of liability under the EPA. The EPA complements, rather than conflicts with, contradicts, or repeals federal pay setting statutes by providing guidance as to the circumstances when it is appropriate for an agency to consider "other relevant factors" to avoid creating a pay disparity that would otherwise be justifiable solely by reference to a comparator's prior salary.

The fact that provisions such as 5 C.F.R. § 531.212(c) and the VA Handbook reference salary history does not eliminate the requirement that agencies comply with the EPA. Specifically, the regulatory scheme codified in the regulations interpreting § 5333 (again, a statute not at issue in this case, as Plaintiff's pay was set under a different provision, 38 USC §7401(3)) gives a list of permissive factors that an agency might consider in setting the pay rate for a new hire, followed by the catchall of "(10) Other relevant factors." 5 C.F.R. § 531.212(c). The agency urges this Court to recognize an "important distinction between Federal and private employment in the context of the EPA." (Doc. 28 at 38).[1] The agency's argument rests on the incorrect assumption that the factors set forth in various statutes and regulations, including 5 U.S.C. § 5333, allow the government to provide lower

---

[1] Page references to the agency's brief are to the docket page, not to the brief's internal page numbers.

protections for workers under the Equal Pay Act. But none of the factors listed in 5 C.F.R. § 531.212(c) is unique to federal employment[2]; nor does any conflict with the EPA. Rather, the regulation can be harmonized with the EPA's requirements.

By contrast with 5 C.F.R. § 531.212(c), the EPA says nothing about what factors an employer may or may not consider when setting pay of new hires. The EPA contains no list of factors, permissive or otherwise, that employers are instructed or forbidden to consider in setting wages. Rather, it sets up a regime approaching strict liability for cognizable pay disparities, while providing an affirmative defense employers may use to avoid liability in certain circumstances. *See* 29 U.S.C. § 206(d)(1). Holding that the "other factor other than sex" defense does not permit reliance on prior pay alone to escape liability for an otherwise cognizable pay disparity does not mean that the EPA effected a "repeal" of § 5333 and its implementing regulations. Rather, this court should find that the EPA complements that statutory scheme by giving guidance to federal employers as to when they may consider "other relevant factors" to avoid creating pay disparities.

The agency's arguments presume that the EPA prohibits employers from ever considering prior pay in their pay setting decisions. This is incorrect. The EPA does

---

[2] The possible exception is "(3) Significant disparities between Federal and non-Federal salaries for the skills and competencies required in the position to be filled." C.F.R. § 531.212(c). However, substitute "disparities between company and competitor salaries" for "disparities between Federal and non-Federal salaries," and it becomes clear that each of these factors is one that might equally motivate a private employer.

not prohibit "considering prior pay when setting a salary." *Rizo v. Yovino*, 950 F.3d 1217, 1231 (9th Cir. 2020). "The disconnect appears to be the result of overlooking the difference between considering prior pay when setting a salary—which the EPA does not address … and relying on prior pay to defend an EPA violation." *Id.* The EPA "addresses the use of prior pay as an affirmative defense, not the consideration of prior pay to make a competitive job offer, to negotiate higher pay, or to set a salary." *Id.* The EPA incentives an employer to determine whether a pay disparity between similarly situated male and female employees may be created, and if so, to consider "other relevant factors" in order to avoid creating a pay disparity.

Federal agencies in the wake of this Court's ruling would remain free to rely on § 5333 and its implementing regulations. The EPA requires, however, that if a pay setting decision gives rise to a cognizable pay disparity, employers may not rely on prior pay alone to establish an affirmative defense. Simply put, this is not a case that raises the issue of statutory "repeal" – partial, implicit, or otherwise.

## II. <u>This Court Should Hold the Prior Pay Alone May Not Serve as an Affirmative Defense to EPA Liability.</u>

Allowing an affirmative defense based on prior pay alone would carve out an exception to Equal Pay Act liability premised, paradoxically, on the continued existence of the very evil the EPA 's strict liability regime was designed to eliminate: persistent wage disparities between similarly situated men and women. *See Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1533 (11th Cir. 1992) (stating

5

that the EPA "prescribes a form of strict liability"); *Rizo*, 950 F.3d at 1223 (*quoting Ledbetter v. Goodyear Tire & Rubber Co.,*, 550 U.S. 618, 640 (2007) for the proposition that "the EPA and Title VII are not the same," in part because "the EPA does not require . . . proof of intentional discrimination"). The agency's proposed defense in this case would permit an employer to avoid strict liability by proving that the disparity did not originate with the current defendant, but rather arose from the male comparator's prior salary in his previous employment. However, under the EPA's strict liability regimen, the origin of a pay disparity is irrelevant.

Citing to *North v. United States*, a district court case not binding on this Court, the agency urges that "the market forces argument is not persuasive." (Doc. 28 at 39) (citing *North v. United States*, 123 Fed. Cl. 457 (2015)). However, as Plaintiff argued in her opening brief, the Ninth Circuit was correct in finding that the statutory text of the EPA, read through the principle of *ejusdem generis*, requires that the "other factor other than sex" defense be premised on job-related factors, and thus precludes reliance on prior pay alone to establish an affirmative defense to EPA liability. *See Rizo*, 950 F.3d 1124 (holding that "[b]ecause the three enumerated exceptions are all job-related, and the elements of the 'equal work' principle are job-related, Congress' use of the phrase 'any *other* factor other than sex' (emphasis added) signals that the fourth exception is also limited to job-related factors.") Reinforcing this conclusion, the Eleventh Circuit in G*lenn v. General Motors Corp*.

examined the legislative history and concluded that the affirmative defense only applies "when the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business." *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988). Flowing from the text of the statute and consistent with the legislative history, this conclusion fits the statutory purpose of ending sex-based wage disparities, as the Ninth Circuit correctly recognized when it reasoned that "allowing prior pay to serve as an affirmative defense would frustrate the EPA's purpose as well as its language and structure by perpetuating sex-based wage disparities." *Rizo*, 950 F.3d 1228. Each of these courts correctly recognized that even in a society that has made considerable progress toward improving pay equity, permitting reliance on prior pay alone as an affirmative defense to EPA liability would create an "exception [that] would swallow up the rule and inequality in pay among genders would be perpetuated" through a feedback loop that perpetuates the status quo, carrying forward background pay disparities even in the absence of intentional discrimination. *See Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995).

Most employees will have had jobs prior to their current employer and thus a salary history that employers may point to as justification for a pay disparity. Even in the absence of bad faith or intention to discriminate, if such a justification is sufficient to establish an affirmative defense, employers will have zero incentive to

equalize pay between similarly situated male and female workers. The Court should reject the agency's arguments and find that neither the plain text of the statute, nor the statute's legislative history, nor the statutory purpose allows an employer to rely on prior salary alone as an affirmative defense.

### III.    The VA Handbook Requires Agencies to Consider Potential Negative Workplace Dynamics Such as Pay Disparities.

The agency further urges that Plaintiff and *amici* "misinterpret" the pay-setting language in VA Handbook 5007, because in the agency's view, "[t]he cited section cautions the VA to consider different factors before it even *recommends* appointing a candidate above the minimum pay grade. It has nothing to do with how to set the pay rate." (Doc. 28 at 53). The agency's cabined view of this language in the VA Handbook is incorrect. The Handbook states that "[p]ay determinations under this paragraph may be made after considering a candidate's existing pay, recent salary history or competing job offer, higher or unique qualifications or special needs of VA." (Appx78). The Handbook cautions, "[b]efore using this pay setting authority, approving officials should consider such things as the number of on-duty personnel in the category under consideration and their pay rates, the number of vacancies and the availability of well-qualified candidates; possible employee and/or community relations problems which may result from using this authority and alternatives to using this authority to include the use of recruitment incentives, a more comprehensive recruitment effort, job redesign, internal training,

use of part-time employees, etc." (Appx79) (emphasis added). Obviously, "this pay setting authority" is used for one overarching purpose: to set the new hire's initial rate of pay. The agency's argument that the Handbook's instruction to "consider … the number of on-duty personnel … and their pay rates" "has nothing to do with how to set the pay rate" is therefore dubious at best, as the more natural reading is that "pay setting authority" includes setting the specific rate of pay. (Doc. 28 at 53).

The Agency's argument also sidesteps the larger point: the Handbook makes clear that the VA has the discretion to incorporate considerations of pay equity in exercising its pay setting authority, and in fact requires the agency to consider whether appointment of a new employee at a rate above the minimum rate for the pay grade might create "possible employee and/or community relations problems" potentially arising from the exercise of its pay setting authority in setting the initial pay rate for the new hire, especially in connection with such considerations as "the number of on-duty personnel in the category under consideration and their pay rates." (Appx78). These provisions in the VA Handbook are entirely compatible with the view of most circuits that have examined this issue and concluded that reliance on prior pay alone is insufficient to establish an affirmative defense to EPA liability. *See Glenn*, 841 F.2d at 1570-71 (11th Cir. 1988); *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015); *Rizo*, 950 F.3d at 1231. Such passages in the VA Handbook further emphasize that the EPA complements rather than contradicts the

9

Agency's existing hiring practices. Accordingly, the Court should reject the agency's arguments seeking to minimize the significance of these passages.

## IV. The Timing of the Comparator's Hiring Is Irrelevant to the EPA Analysis.

The agency further argues that "[b]oth Ms. Boyer and *amici* fail to address how their pay equity arguments gain traction when the male comparator was hired *after* plaintiff." (Doc. 28 at 64). But whether the comparator was hired before or after Ms. Boyer makes no difference to the analysis, as the Equal Pay Act allows a plaintiff to establish a prima facie case (which the agency concedes she has done here) by showing that she and a male comparator perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.S. § 206(d)(1). There is no additional requirement under the EPA that Plaintiff's comparator be hired at the same time, before her, or after her. Contrary to the agency's argument, a plaintiff's employment need not even overlap with her comparator's employment. Rather, Courts have made clear that "[t]he Equal Pay Act does not require that the jobs being compared be performed simultaneously" and that "[u]nder the EPA, the job comparison may appropriately consider immediate predecessors or successors of the plaintiff." *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 492 (8th Cir. 2003) (internal quotes and citations removed); see also *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999) ("Plaintiff may use her successor in the position as a

salary comparator for purposes of establishing the prima facie case.") As a practical matter, when Plaintiff's comparator was hired, Ms. Boyer was already employed by the VA. This circumstance makes especially relevant the VA Handbook's guidance that an Agency "should consider such things as the number of on-duty personnel in the category under consideration and their pay rates" along with "possible employee … relations problems which may result … and alternatives to using this authority" to avoid creating pay inequities. (Appx79). Again, the EPA does not require that the comparator employee be hired at the same time as, before, or after the female employee, and the Court should reject the agency's arguments to the contrary.

## V.     Disjunctive Language Further Emphasizes that Agencies Have the Discretion to Avoid Creating Pay Disparities.

The Agency argues that the disjunctive language in the OPM regulation and VA Handbook forecloses Plaintiff's arguments, positing that "under her theory, an agency could only consider prior pay in conjunction *with* a different factor… The logical result of her argument is that prior pay cannot be used *alone*, which is contrary to the express language of the regulation." (Doc. 28 at 52-53). This is incorrect because in circumstances where a pay disparity may be created, the disjunctive language in the OPM regulation makes clear that an Agency has discretion to consider other factors in addition to prior pay (such as, for instance, "the number of on-duty personnel in the category under consideration and their pay

11

rates," as referenced in the VA Handbook). Again, the agency may exercise such discretion in pay setting to avoid creating pay disparities cognizable under the EPA.

## VI. Existing Regulatory Frameworks Provide Agencies Flexibility To Consider Prior Pay In Setting Salaries While Also Complying With The EPA.

The agency points to the legislative history of the EPA and §5333 and argues that "even after Congress extended the EPA to Federal employees, Congress made *no* changes to the pay language in 5 U.S.C. § 5333." (Doc. 28 at 46). Again, this argument rests on an incorrect premise: that 5 U.S.C. § 5333 and the EPA are in conflict if this Court interprets the EPA as prohibiting an agency from relying on prior salary alone in meeting its burden of justifying a pay disparity by reference to an "other factor other than sex." The opposite conclusion is more plausible: that Congress did not amend §5333 because agencies already have the flexibility to consider prior pay in setting salaries, while also considering "other relevant factors" and thereby avoid creating a pay disparity between similarly situated male and female employees. Thus, the regulations are in harmony with the EPA.

## VII. The Court Should Reject Defendant's Arguments that the Agency Handbook May Serve as an "Other Factor Other than Sex" Because it is "Gender Neutral."

Citing again to *North v. U.S.*, the agency urges that this Court should find that as long as an agency's reliance on the VA Handbook is "gender neutral," it should be able to avoid EPA liability "even if pay disparity results from considering prior

or existing salaries." (Doc. 28 at 53-54). However, this argument inappropriately seeks to reframe the issue more broadly as to whether the VA may "follow the guidance of handbooks, such as the VA Handbook 5007, in determining compensation." (Doc. 28 at 54). Such repackaging is incorrect, and tantamount to a private employer seeking to avoid liability under the EPA by pointing generally to its policy manual or its "general practices." See, e.g., *Steger v. GE*, 318 F.3d 1066, 1078 (11th Cir. 2003) (observing that "employer may not rely on a 'general practice' as a factor 'other than sex.'") It also misstates the core question before this Court. Unlike in *North*, no one here disputes that the agency may utilize the Handbook.[3] Rather, the question presented here is which of the factors in the Handbook explains the wage disparity between Plaintiff and her comparator, and whether the Agency may carry its affirmative defense through reliance on the factor of prior pay alone.

The district court correctly recognized that "a reasonable factfinder viewing the facts in the light most favorable to Plaintiff could conclude that existing or prior pay *alone* explains the salary differential." (Appx27). In framing the agency's

---

[3] In *North*, by contrast, the plaintiff was attacking that agency's reliance on the entire body of pay setting regulations and seeking to show that the Agency's Personnel Manual Instruction was "void." *See* 123 Fed. Cl. at 464: "Ms. North first attempts to invalidate PMI 338-1 by arguing that the agency's personnel manual instruction contradicts the governing statute, 5 U.S.C. § 5333, and is 'completely void.'" Plaintiff makes no such argument here. On the contrary, Plaintiff here argues that § 5333, 5 C.F.R. § 531.212(c), and the VA Handbook complement the EPA in allowing the employer to take into account whatever factors it needs to consider in order to avoid creating pay disparities between similarly situated employees of opposite genders that would be justifiable solely by reference to the male comparator's higher prior pay.

affirmative defense, this Court should resist the agency's invitation to broaden the focus to what factors the agency might have considered but didn't (e.g. the various permissive factors listed in the VA Handbook). This is particularly so given Kendra Brookshire's testimony that "if their pay stubs would justify a higher salary … relevant experience kind of just goes by the wayside." (Appx281). Instead of allowing the agency to establish its affirmative defense through reliance on factors that admittedly went "by the wayside," the Court should look closely at what specific factors the employer actually relied on in differentiating Plaintiff's comparator's pay from hers. *See, e.g.*, *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006) ("Where, as here, employers seek summary judgment as to [an] Equal Pay Act claim, they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains"). Again, the district court was correct in concluding that "existing or prior pay *alone* explains the salary differential." (Appx27).

Moreover, as Plaintiff argued in her opening brief, a reasonable factfinder could conclude that the VA did not follow the procedures in its Handbook. The VA has produced no evidence that it observed the Handbook's instruction that "approving officials should consider such things as the number of on-duty personnel in the category under consideration and their pay rates…" (Appx78). The Agency also has produced no evidence that it considered the "possible employee and/or

community relations problems" that would arise from creating a pay disparity between Plaintiff and her comparator justifiable solely by reference to the comparator's prior salary. (Appx79). If the Agency had followed its own procedures, it would have been required to consider the pay rates of on-duty personnel such as Plaintiff and also to consider "alternatives to using this authority" to avoid creating "possible employee and/or community relations problems" that would result from a pay disparity justifiable only by reference to the male comparator's prior salary. (Appx79). There is no evidence that the VA considered these "other factors."

Accordingly, for summary judgment purposes, the VA cannot prove that it relied on any factor other than her comparator's higher prior pay. Supporting this conclusion, Sfakianos, the selecting official, testified, "...I boarded everybody exactly the same without regards to anything special other than their current pay stubs." (Appx260). Similarly, Kendra Brookshire, the Chair of the three-member Board that recommended L.C. be hired at Step 10 and Plaintiff at Step 7, testified, "So we look at their education, training, and qualifying experience and kind of go that route. But at the end of the day pay stubs can basically trump what would be determined by the qualifying experience." (Appx279). Brookshire continued, "...it could be that you know they're presented with you know this could be your salary, and they're like oh I can't come for that. You know, and then you know they may

be asked to provide pay stubs. But at any rate, if their pay stubs would justify a higher salary … relevant experience kind of just goes by the wayside." (Appx281).

The Agency further argues that "Ms. Boyer's 'superior qualifications' analysis conflates the determination of whether a candidate has 'superior qualifications' with the selection of the pay rate," (Doc. 28 at 59), and that "the agency treated Ms. Boyer and the male comparator *the very same* when it determined that both candidates had 'superior qualifications' to merit initial pay above the minimum grade." (Doc. 28 at 60). As further evidence of alleged "equal" treatment, the agency argues that "there is uncontroverted evidence demonstrating that the Birmingham VAMC considered prior pay, as well as experience and education, in setting the pay of Ms. Boyer and the male comparator." (Doc. 28 at 61). Again, the agency's argument is misleading. As reasoned by the Eighth Circuit, the focus is not the laundry list of factors that were identical between the two candidates; rather, "[i]t is the differential that must be explained." *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1073 (8th Cir. 2009). Ms. Skafianos's admission unequivocally establishes that prior pay was the <u>only</u> factor that explains why Plaintiff's comparator made more. The District Court recognized as such in finding that a reasonable factfinder "could conclude that existing or prior pay *alone* explains the salary differential." (Appx27). The Court should reject the Agency's arguments to the contrary.

16

## VIII. <u>The Trial Court Inappropriately Shifted the Burden of Proof to Plaintiff to Show Intentional Discrimination</u>.

The agency argues that in its view, the trial court did not inappropriately shift the burden of proof by relying on an alleged admission in Ms. Boyer's deposition testimony. However, the Agency concedes important points. First, the agency confirms its judicial admission that Ms. Boyer established a prima facie case. (Doc. 28 at 57-58). The agency quotes the trial court's reasoning that "basing a pay rate on a prior salary *could* perpetuate past discrimination if gender discrimination led to that prior salary, but Plaintiff has not made, much less offered any evidence to support such a claim." (Doc. 28 at 57). This excerpt from the trial court's opinion exemplifies the trial court's error: Plaintiff did not need to prove that she was discriminated against in her previous job because the agency conceded that she had established a prima facie case. With the prima facie case conceded, the "heavy" burden was on the agency to prove its affirmative defense, not on Plaintiff to further prove intentional discrimination. *See, e.g.*, *United States EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018). In turning the Agency's burden of proof against Ms. Boyer and focusing on her alleged admission in her deposition, and more broadly on the issue of intentional discrimination, the trial court overlooked the key difference between statutes such requiring a showing of intentional discrimination and the EPA: "the EPA and Title VII are not the same," because "the EPA does not

require . . . proof of intentional discrimination." *Ledbetter*, 550 U.S. at 640. Unlike Title VII, the EPA "prescribes a form of strict liability." *Miranda*, 975 F.2d at 1533.

In a second concession, the agency admits that Ms. Boyer's alleged admission is irrelevant, conceding that the case turns instead on the question of whether an agency may carry its burden of establishing the affirmative defense by reliance on prior pay alone. (Doc. 28 at 58). For the reasons discussed above, the Court should find that reliance on prior pay alone is an insufficient basis to establish the affirmative defense, and it should reverse and enter judgment for the plaintiff.

**IX.** **The Agency Had the Ability to Take Into Account the Salaries of Current On-Duty Personnel, Including Plaintiff, When it Set the Salary of her Comparator.**

The agency also protests that "the agency would have needed to reduce the male comparator's salary to that of Ms. Boyer's." (Doc. 28 at 63). However, this is incorrect, as this case involves pay setting at the initial hire stage. At the time Plaintiff's comparator was hired, he had no existing salary to reduce; the EPA's prohibition on "reduc[ing] the wage rate of any employee" thus is not material to this case. 29 USC § 206(d)(1). When setting the comparator's salary, the agency had the ability to consider Plaintiff's existing salary along with "other relevant factors," including the fact that Plaintiff and her comparator were to perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility … under similar working conditions." 29 U.S.C.S. § 206. Similarly, the Agency had

the ability to "consider such things as the number of on-duty personnel in the category under consideration and their pay rates" along with "possible employee … relations problems which may result … and alternatives to using this authority" to avoid creating pay inequities. (Appx79). Contrary to the Agency's suggestion, remedial statutes such as the Equal Pay Act are not a zero-sum game. This court finding that the Agency failed to carry its burden of proof in establishing an affirmative defense to liability in this matter will do nothing to harm Ms. Boyer's comparator, other federal employees, or males in general. Rather, such a ruling will simply make clear that the "other factor other than sex" defense is not available to defendants who rely on prior salary alone to justify lower pay for female employees.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Based on the above arguments, authorities, and evidence, the lower court's order should be reversed. This Court should find that as a matter of law, an Agency may not carry its burden of establishing an affirmative defense through reliance on prior salary alone, and that in this case, the Agency has failed to produce evidence that it relied on any factor other than M.C.'s higher prior salary in differentiating him from Plaintiff in the decision to pay him more than it paid her. Accordingly, judgment should be entered for the plaintiff. In the alternative, to the extent Plaintiff is not entitled to summary judgment, this matter should be remanded for trial.

Respectfully Submitted,

/s/ *L. William Smith*
Jon C. Goldfarb
L. William Smith
Attorneys for Plaintiff-Appellant

**OF COUNSEL:**
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC.
301 19th ST N
Birmingham, AL 35203
205-314-0589 (telephone)
205-254-1500 (fax)
jcg@wigginschilds.com
wsmith@wigginschilds.com

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1822

**Short Case Caption:** Boyer v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5465 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/27/2023

Signature: /s/ L. William Smith

Name: L. William Smith