# United States Court of Appeals for the Federal Circuit

---

**LESLIE BOYER,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1822

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00438-ZNS, Judge Zachary N. Somers.

---

Decided: March 26, 2024

---

LACHLAN W. SMITH, Wiggins Childs Pantazis Fisher & Goldfarb LLC, Birmingham, AL, argued for plaintiff-appellant. Also represented by JON C. GOLDFARB.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

DEBRA D'AGOSTINO, The Federal Practice Group, Washington, DC, for amici curiae A Better Balance, American Medical Women's Association, California Women

Lawyers, California Women's Law Center, Center for Women's Health & Human Rights, Suffolk University, Chicago Foundation for Women, Clearinghouse on Women's Issues, Desiree Alliance, Equal Rights Advocates, Faith Action for All, Feminist Majority Foundation, Hadassah, the Women's Zionist Organization of America, Human Rights Campaign, If/When/How: Lawyering for Reproductive Justice, In Our Own Voice: National Black Women's Reproductive Justice Agenda, In the Public Interest, Indiana Community Action Poverty Institute, International Action Network for Gender Equity & Law, Lawyers Club of San Diego, Legal Aid at Work, Legal Momentum, the Women's Legal Defense and Education Fund, NARAL Pro-Choice America, National Asian Pacific American Women's Forum, National Association of Women Lawyers, National Coalition on Black Civic Participation, National Consumers League, National Crittenton, National Employment Lawyers Association, National Health Care for the Homeless Council, National LGBTQ Task Force, National Women's Law Center, National Womens Political Caucus, Queen's Bench Bar Association of the San Francisco Bay Area, Religious Coalition for Reproductive Choice, Reproaction, Service Employees International Union, Shriver Center on Poverty Law, SisterReach, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Women Employed, Women Lawyers On Guard Inc., Women's Bar Association of the District of Columbia, Women's Bar Association of the State of New York, Women's Institute for Freedom of the Press, Women's Law Center of Maryland, Women's Law Project, Women's Media Center. Also represented by JANEI AU; GAYLYNN BURROUGHS, SUNU CHANDY, PHOEBE WOLFE, National Women's Law Center, Washington, DC.

---

Before DYK, CHEN, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

Dr. Leslie Boyer brought suit against the United States, claiming a violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), because the government set her pay unequally compared to a male comparator. The Court of Federal Claims ("Claims Court") granted summary judgment to the United States on the ground that, under the EPA, an employer may consider a "factor other than sex," that "Congress permitted the [Veteran's Administration] to use existing or prior pay alone [as a factor other than sex] in determining pay rates for new appointees," and prior pay accounted for the differential in this case. J.A. 36. We conclude that the EPA applies equally to the United States as to other employers and that mere reliance on prior compensation standing alone is not an affirmative defense to a prima facie case under the EPA, unless the employer can demonstrate that the prior pay itself was not based on sex. We reverse the grant of summary judgment to the United States and remand for further proceedings consistent with this opinion.

## Background

### I

Dr. Boyer was employed by the Veterans Affairs Medical Center of Birmingham, Alabama ("BVAMC") as a clinical pharmacist in 2015. Six months later, BVAMC hired a male clinical pharmacist. Both Dr. Boyer and the male comparator were hired according to the federal hiring system, the General Schedule or "GS" system. The federal hiring system sets salary scales by locality, with each federal position assigned a grade. Within each grade, there are a series of steps with corresponding salary increases. To hire an employee over the minimum rate within a particular grade, the agency must make a showing that certain qualities justify that departure, including superior qualifications, special needs of the government, and prior compensation. 5 C.F.R. § 531.212.

At the time of her hiring, Dr. Boyer was appointed as a clinical pharmacist at GS-12, Step 7 with a starting salary of $115,364. Although the minimum rate in this locality for GS-12 clinical pharmacists was $96,133 at Step 1, Dr. Boyer was appointed at Step 7 ($115,364) due, at least in part, because of her prior salary, which was $115,003. The male comparator was appointed at a GS-12, Step 10, with a starting salary of $126,223. His prior salary was $130,000.

There are alleged other differences between the two. Dr. Boyer contends that she was more qualified than the male comparator, having had seven more years of experience after graduating with her doctorate in pharmacy in 1999. She also contends that she had unique mental health work experience as compared to the male comparator. The government argues that the male comparator was more qualified in other ways, having a master's degree in biological sciences in addition to his doctorate in pharmacy and different work experience.

Three years after her hiring, Dr. Boyer discovered the pay discrepancy. She inquired about the differential with Human Resources and eventually, in 2018, filed an Equal Employment Opportunity ("EEO") complaint, alleging wage discrimination. The EEO counselor created an investigative report in 2019 but did not issue any official conclusions or recommendations. Two months later, Dr. Boyer filed suit in the United States District Court for the Northern District of Alabama, alleging a violation of the EPA. *Boyer v. Wilkie*, No. 2:19-CV-00552 (N.D. Ala. transferred Feb. 13, 2020).[1]

---

[1] The parties consented to the jurisdiction of a magistrate judge. ECF No. 11 (May 30, 2019).

## II

The Equal Pay Act codifies "the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974). The EPA provides that no employer that is subject to the Act shall discriminate between employees of the opposite sex for equal work that requires "equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The EPA has four exceptions to this general principle, where a differential is made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.*

Under the EPA, the plaintiff has the burden of establishing a prima facie case—showing that the employer pays employees of the opposite sex who perform substantially equal work unequally.[2] *Corning Glass Works*, 417 U.S. at 195. Once established, the burden of proof shifts to the employer to prove that the differential is made pursuant to one of the four affirmative defenses. *Id.* at 196–97; *see Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006). If the employer successfully establishes that the differential was made pursuant to one of the four defenses, the

---

[2] The Claims Court noted that in *Yant v. United States*, the Federal Circuit affirmed the grant of summary judgment to the government when there was no showing that the salary differential was "either historically or presently based on sex." 588 F.3d 1369, 1372 (Fed. Cir. 2009). This holding was recently overruled in *Moore v. United States*, which held that a prima facie case under the EPA does not require a showing that a pay differential is either historically or presently based on sex. 66 F.4th 991, 997 (Fed. Cir. 2023) (en banc).

plaintiff may counter that the affirmative defense is merely pretextual. *See, e.g.*, *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (citing *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999)).

The government conceded that Dr. Boyer had established a prima facie case under the Equal Pay Act because Dr. Boyer and the male comparator performed work of similar skill, effort, and responsibility under similar working conditions for unequal pay. But the government argued that the pay differential was justified by a "factor other than sex," namely Dr. Boyer's prior salary. Dr. Boyer in turn contended that the BVAMC violated the EPA by relying on prior salary alone to set her and the male comparator's disparate salaries. There is no contention that the government's reliance on prior salary was pretextual.

III

The Northern District of Alabama initially granted summary judgment to Dr. Boyer, finding that "the record establishes that prior salary alone was the reason for [the] salaries and 'such a justification cannot solely carry the affirmative defense.'" *Boyer v. Wilkie*, No. 2:19-CV-00552, 2019 WL 13268069, at *5 (N.D. Ala. Nov. 5, 2019) (quoting *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995)). Thereafter, the government filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction, and plaintiff filed a motion to transfer the case to the Court of Federal Claims ("Claims Court"). The magistrate judge vacated his ruling on summary judgment and transferred the case.

Before the Claims Court, the parties cross-moved for summary judgment. The Claims Court concluded that the statute allowed consideration of factors other than sex and held that consideration of prior pay alone was a factor other than sex. In reaching this conclusion, the court relied on a pay-setting statute, 5 U.S.C. § 5333, which allows prior pay to be considered in hiring. The Claims Court concluded

that Congress provided as to federal employees that "existing pay *alone*, without regard to high or unique qualifications or other factors, is an appropriate reason to depart from the otherwise minimum rate of pay under the GS system." J.A. 29. The Claims Court also relied on 38 U.S.C. § 7408, containing similar language in a statute governing aspects of VA hiring. Because, in the Claims Court's view, prior pay alone could establish an affirmative defense to a prima facie case under the EPA in the context of federal employees, the court granted summary judgment for the government and denied Dr. Boyer's motion for summary judgment. This appeal followed.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); Rule 56(a) of the Rules of the Court of Federal Claims (RCFC). We review the grant of summary judgment by the Claims Court de novo. *Id.*

## I

This case presents the question whether the rules concerning consideration of prior compensation should be different for federal employers as compared to employers outside the federal government in light of two federal statutes that together apply to most, but not all, federal employee hiring and that permit consideration of prior pay in hiring—5 U.S.C. § 5333 and 38 U.S.C. § 7408. These statutes do not apply to Dr. Boyer because she was hired pursuant to 38 U.S.C. § 7401(3), a statute that provides specifically for the hiring by the VA of certain health professionals (including pharmacists), though the VA Handbook governing such hiring states that "[a]uthorized officials may, after considering an individual's existing pay,

higher or unique qualifications, or special needs of VA, appoint . . . VHA GS patient-care personnel at rates of pay above the minimum rate." VA Handbook 5005, Part II, Chapter 3 (Dec. 6, 2007). The government argues that, unless one rule is held to be applicable to all federal employees, the different statutes would in practice "carve VA employees into distinct classes for the purpose of EPA claims." Appellee Br. at 24 (quoting J.A. 34). We agree the EPA should apply equally to all federal employees. The question here is whether it applies differently to federal employees than to employees outside the federal government.

## II

We first consider the standard applicable to employers other than the federal government and whether prior compensation in that context can justify a pay differential.

### A

The EPA was enacted in 1963. The EPA prohibited wage discrimination on the basis of sex for work that requires "equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). As the Supreme Court long ago made clear, "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Corning Glass Works*, 417 U.S. at 208.

As noted, the EPA provides for four exceptions justifying a salary differential between employees of the opposite sex, when the differential is made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* Here, we are concerned with the fourth exception and the question whether prior pay is a factor other than sex.

The courts of appeals have adopted three main approaches to the use of prior compensation as a "factor other than sex" defense to the EPA. 29 U.S.C. § 206(d)(1)(iv). The Fourth and the Seventh Circuits have held that prior pay is a factor other than sex and that, standing alone, it can justify differential treatment. They interpret the fourth "catchall" exception to include virtually any factor, so long as it is not sex. *Wernsing v. Dep't of Hum. Servs., State of Ill.*, 427 F.3d 466, 469 (7th Cir. 2005). Because, in the Seventh Circuit's view, "markets are impersonal and have no intent," setting wages based on what the market will bear cannot be discriminatory—so the EPA is not violated even when prior compensation is the only justification for a wage differential. *Id.*; *see also Spencer v. Va. State Univ.*, 919 F.3d 199, 206 (4th Cir. 2019).

The remaining circuits that have considered the question have rejected this approach, holding that consideration of prior pay standing alone cannot be a factor other than sex. One circuit, the Ninth, has held that prior pay can never justify unequal pay. *Rizo v. Yovino*, 950 F.3d 1217, 1229 (9th Cir. 2020). The court found that the presence of the first "other" in the phrase "any other factor other than sex" limits the word "factor" to considerations that are job-related. *Id.* at 1229. The EPA "requires employers to demonstrate that only job-related factors, not sex" caused the wage disparities between employees of the opposite sex. *Id.* at 1228. In the Ninth Circuit's view, "the history of pervasive wage discrimination in the American workforce prevents prior pay from satisfying the employer's burden to show that sex played no role in wage disparities between employees of the opposite sex." *Id.* Therefore, prior pay is excluded as a factor other than sex under 29 U.S.C.A. § 206(d)(1)(iv).[3]

---

[3] In *Rizo*, the Ninth Circuit describes the difference between using prior pay when justifying a wage

Three circuits have followed a middle ground, allowing consideration of prior pay while acknowledging that it may perpetuate existing discrimination, and have held that prior pay can be a factor other than sex only if it is considered together with at least one other permissible factor, for example experience or education. *See, e.g.*, *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826, 832 (2011) ("Consideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity."); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1570–71 (11th Cir. 1988); *Irby v. Bittick*, 44 F.3d 949, 955–56 (11th Cir. 1995); *Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1506 (11th Cir. 1988); *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015).[4]

The basic notion behind these cases is an employer has shown that a lower rate of prior pay is not serving as a

---

differential under the EPA and relying on prior pay when setting an employee's salary. 950 F.3d at 1231. Some find this not to be a meaningful distinction. *See id.* at 1234 (McKeown, J., concurring) ("Permitting prior pay in setting salary but not as an affirmative defense to the Equal Pay Act results in an indefensible contradiction. The 'tension' highlighted by the majority is precisely the reason that prior pay cannot be relegated to the dust bin.").

[4] The Eighth Circuit has permitted the use of prior salary only after "carefully examin[ing] the record to ensure that an employer does not rely on the prohibited 'market force theory' to justify lower wages" for women. *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1073 (8th Cir. 2009) (quoting *Taylor v. White*, 321 F.3d 710, 718 (8th Cir. 2003)). "In conducting this examination, this court's concern is related solely to the issue of whether the prior salary is based on a factor other than sex." *Id.*

proxy for sex—and is thus "other than sex," as required by the EPA—when there is a clearly identified other reason besides sex (such as less education or less experience). In those circumstances, those "business reasons . . . reasonably explain the utilization of prior salary." *Irby*, 44 F.3d at 955 (alteration in original) (quoting *Price*, 856 F.2d at 1506). The concern about relying on prior pay standing alone in the case of female hires is that prior pay might be artificially reduced by prior sex discrimination such that the prior pay would be lower than that for the male comparator and its consideration would improperly justify a lower starting salary for an equally qualified female hire.[5] If there are other differences between the two that are truly considerations unrelated to sex (education, work experience, recommendations, etc.) that favor the male comparator, it is likely that these same differences could explain any prior pay gap as well. Under these circumstances, the employer can properly rely on educational, experience, or other legitimate, non-sex-based differences and prior pay together.

B

This middle ground approach recognizes that sex discrimination can be (but is not always) inherent in prior pay. As both the government and Boyer acknowledge, the concern with the use of prior compensation is that prior compensation itself may be lower because it reflects gender discrimination. The concern is well justified. As pointed out by amici and not contradicted by the government, "the gender wage gap has hardly narrowed over the last 15 years." Brief for National Women's Law Center, et. al. as Amici Curiae Supporting Plaintiff-Appellant at 8, Boyer v.

---

[5] The concern about relying on prior pay generally arises only if it is used to justify a pay differential, *i.e.*, where the male comparator's prior pay is higher than the female hire's prior pay.

United States (No. 22-1822) (citing Amanda Barroso & Anna Brown, *Gender Pay Gap in U.S. Held Steady in 2020*, Pew Research Ctr. (May 25, 2021), https://www.pewresearch.org/fact-tank/2021/05/25/gender-pay-gap-facts/). "[W]omen working full time, year round were paid just 84 cents for every dollar paid to men in 2021." *Id.* (citing Nat'l Women's Law Ctr., *NWLC Resources on Poverty, Income, and Health Insurance in 2021* (Sept. 13, 2022), https://nwlc.org/resource/nwlc-resources-on-poverty-income-and-health-insurance/); *see also* Jessica Semega & Melissa Kollar, *Income in the United States: 2021*, U.S. Census Bureau, Current Population Reports, at Table A-7 (Sept. 2022), https://www.census.gov/content/dam/Census/library/publications/2022/demo/p60-276.pdf. When a pay disparity is the result of sex discrimination, using prior pay to set compensation necessarily perpetuates unjustified pay disparities.

The government does not dispute—as an empirical premise—that reliance on prior pay can perpetuate improper disparate treatment. It could hardly do otherwise. During the pendency of this appeal, the government finalized regulations prohibiting consideration of prior pay when setting salary for new employees. *Advancing Pay Equity in Governmentwide Pay Systems*, 89 Fed. Reg. 5737, 5754–57 (Jan. 30, 2024) (to be codified at 5 C.F.R. pts. 531–32, 534 & 930).[6] In its rulemaking, the government conceded, among other things, that "[b]ecause salary history is not always a good proxy for worker value, experience, and expertise . . . setting pay based on a candidate's salary history could perpetuate a pay rate that [is] inequitable." *Id.* at 5748.

---

[6] This regulation will only apply prospectively. *Id.* at 5737. The rulemaking does not address the question of whether the EPA is violated by consideration of prior pay alone.

Thus, using prior compensation alone could undermine a core concern of the EPA—to eliminate gender discrimination in compensation. *See also id.* at 5752 ("21 states and 22 localities have enacted laws prohibiting the use of salary history in setting pay."). The empirical evidence discussed by the government in its proposed rulemaking, which proposal Dr. Boyer cited in a notice of supplemental authority, reflects that when government actors have enacted bans on considering prior pay, they have seen increases in women's salaries and decreases in the gap between men and women's salaries—confirming that prior pay may operate as a proxy for sex. *See* Appellant's Citation of Supplemental Authority, ECF No. 50 (referencing 88 Fed. Reg. 30251 (May 11, 2023)); *see also* 88 Fed. Reg. at 30258. In the final rulemaking, the government acknowledged that "[p]ay setting based on salary history may be inequitable, can perpetuate biases from job to job, and may contribute to a pay gap between the earnings of men and women." 89 Fed. Reg. at 5737.

In light of these factual premises, relying on prior compensation alone as an affirmative defense to the EPA risks thwarting the Act's most fundamental goal—equal pay for equal work. In short, these empirical premises recognize the simple fact that prior pay can be—and frequently is—a proxy for the sex of the worker.[7] When prior pay is a proxy for sex, it is not "*other than* sex"—it is intertwined with sex. The EPA prohibits reliance on prior pay unless (1) the prior pay itself is not based on sex, or (2) an additional permissible factor "other than sex" is present to assure a factfinder that the "other factor" of prior pay is indeed "other than sex" (i.e., not a proxy for sex).

---

[7] It is significant that these factual points are not only undisputed by the government in its briefing and at oral argument, but affirmatively advanced by the government in the rulemaking.

C

It follows that because it is undisputed that prior pay can perpetuate systemic gender discrimination, the best interpretation of the phrase "other factor other than sex" does not include prior pay alone (unless that prior pay itself can be shown to be not based on sex). We are in agreement with the Sixth, Tenth, and Eleventh Circuits with this one qualification. We think that this approach most conforms with the both the text and the underlying central purpose of the EPA.

This middle-ground approach also meets the EPA's goal to accommodate legitimate business interests, particularly the requisite flexibility to hire and retain employees. *See Washington Cnty. v. Gunther*, 452 U.S. 161, 171 n.11 (1981) ("[T]he fourth affirmative defense [was included] because of a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted."). Thus, this approach acknowledges that there may be legitimate reasons to consider prior salary, such as the ability to hire and retain skilled workers, but that prior salary without consideration of other factors can allow behavior to persist that is "antithetical to the language and purpose of the EPA." Jennifer Safstrom, *Salary History and Pay Parity: Assessing Prior Salary History as a "Factor Other Than Sex" in Equal Pay Act Litigation*, 31 Yale J.L. & Feminism 135, 139 (2019).

We also agree that, as many of our sister circuits have held, this exception (consideration of prior pay with other non-sex-based factors) is permissible only if that consideration was <u>in fact</u> the basis for the decision, but not if it is offered as an after the fact justification. *See Drum v. Leeson Elec. Corp.*, 565 F.3d 1071 (8th Cir. 2009). In *Drum*, the court held that "merely . . . articulating a legitimate, non-discriminatory reason" will not allow an employer to "escape liability." *Id.* at 1072 (quoting *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579 (8th Cir. 2006)).

Instead, "the defendant must prove that the pay differential was based on a factor other than sex." *Id.* (quoting *Simpson*, 441 F.3d at 579). Similarly, other circuits have explained that it is not enough that "the employer's proffered reasons *could* explain the wage disparity." *Riser*, 776 F.3d at 1198 (quoting *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006)). It is necessary that "the proffered reasons *do in fact* explain the wage disparity." *Id.* (quoting *Mickelson*, 460 F.3d at 1312); *see also U.S. Equal Emp. Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018). Because language of the EPA prohibits a disparity in pay among genders "'except where such payment *is made pursuant to*' one of the four . . . affirmative defenses," it is not enough to provide a post hoc nondiscriminatory reason without evidence that the nondiscriminatory reason *actually* motivated the decision to set unequal pay. *Mickelson*, 460 F.3d at 1312 (emphasis added) (quoting 29 U.S.C. § 206(d)(1)).

D

In short, the central lesson is that the prior pay cannot be an "other factor other than sex" if the prior pay itself is the product of sex discrimination. In joining the other circuits and adopting this middle ground, we think one further qualification is required. It is necessary to leave room for an employer to otherwise establish that the prior pay is not based on sex. If the employer can establish that prior pay was not based on sex, the employer is relying on an "other factor other than sex" to justify the disparity. We leave for future cases to consider what evidentiary showing is needed to carry this burden.

Both the text of the EPA and precedent require the employer to carry the burden of establishing that the prior pay was not the product of gender discrimination. Consistent with the characterization as an affirmative defense, the Supreme Court, our court, and every circuit to expressly consider address the question have concluded that the

employer bears the burden of establishing the factual premises underlying the affirmative defense. *See, e.g.*, *Corning Glass Works,* 417 U.S. at 196 (stating that once a prima facie case has been set out, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions"); *Moore v. United States*, 66 F.4th 991, 996 (Fed. Cir. 2023) (en banc); *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543, 548 (7th Cir. 1991) ("If an EPA plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to provide evidence of any of the statutorily based affirmative defenses . . . .").

Thus, the employer bears the burden to prove its affirmative defense that prior pay is a factor other than sex because it does not reflect sex discrimination. As we explained in *Moore v. United States*, once a prima facie case is established, "it becomes the *employer's* burden to prove—as an affirmative defense—that the pay differential has a permissible *non-sex-based* justification." 66 F.4th at 996.

That burden allocation follows from the plain text of the EPA. The EPA requires an employer to show both that the pay differential was justified by an "other factor" *and* that such factor was "other than sex." 29 U.S.C. § 206(d)(1)(iv). Merely showing that an employer relied on prior pay—the alleged "other factor"—does not carry the full burden imposed by the statute. *Id.* Instead, the employer must also show that the prior pay was not based on sex—that it was, in fact, also "other than sex." *Id.* As the party with the burden of proof, the employer is not entitled to simply assume that prior pay is unrelated to (or "other than") sex. Without a showing that the prior pay is a "non-sex-based" justification, an employer cannot carry the affirmative defense. *Moore*, 66 F.4th at 996. This approach is simply a faithful application of the requirement that the employer must show both the existence of an alleged "other factor" *and* must—as a factual matter—show that it is "other than sex."

In summary, the employer can only rely on prior pay if either (1) the employer can demonstrate that prior pay is unaffected by sex-based pay differentials or (2) prior pay is considered together with other, non-sex-based factors.

## III

The government does not dispute that other circuits have held in the context of employers other than the federal government that prior compensation alone in general cannot be the governing factor. Nor does the government or the Claims Court "suggest that other courts have incorrectly construed the EPA as precluding defendants' reliance on existing or prior pay alone to justify pay differentials between employees of different sexes." J.A. 30 n.13. However, the government argues that a different rule should prevail with respect to federal government employees.

### A

Initially, the EPA applied only to private employees and did not apply to federal employees (or state and local government employees). The federal government was apparently excluded as an employer simply because the EPA was an amendment to the Fair Labor Standards Act, and the government was excluded from coverage when the first Fair Labor Standards Act was passed in 1938. S. REP. NO. 88-176, at 2 (1963). In the Fair Labor Standards Act of 1938, the definition of "[e]mployer" did "not include the United States or any State or political subdivision of a State." Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060, 1060 § 3(d). There appears to have been no policy reason for the exclusion of federal government employees under the EPA's initial coverage.

In 1974, the EPA was amended to apply to federal employees. The 1974 Fair Labor Standards Amendments expanded the coverage of both the Fair Labor Standards Act and the Equal Pay Act to "individual[s] employed by the

Government of the United States." 29 U.S.C. § 203(e)(2)(A).[8] Congress included no statutory restriction or language indicating that the FLSA—or the EPA—should apply differently to government workers. Before us, the government has identified nothing in the text of the 1974 Fair Labor Standards Amendments that indicates an intent to provide disparate treatment under the EPA for federal government workers. Instead, the plain text of the 1974 Fair Labor Standards Amendments simply expands the ordinary operation of the FLSA—including the EPA—to cover an additional class of workers: those employed by the federal government.

The legislative history of these amendments confirms an intention to achieve equal treatment of government and private employers and employees. The Senate Committee on Labor and Public Welfare in the 1972 report on a previous version of the bill recognized that "[m]any arguments have been advanced for bringing public employees under the [Fair Labor Standards Act]. A major argument was and continues to be a moral one. Government should be willing to apply to itself <u>any standard</u> it deems necessary to apply to private employment." S. REP. NO. 92-842, at 18 (1972) (emphasis added). Again in 1974, in reporting the final version of the bill, the Senate Report stated the purpose of the bill was "to amend the Fair Labor Standards Act of 1938, as amended, to extend *its protection* to additional employees"—not to extend some lesser (or different)

---

[8] In 1966, the Fair Labor Standards Act was amended to include some state government employees. The 1974 Amendments further expanded coverage to include virtually all federal and state government employees. H. REP. NO. 93-953, at 6 ("'Public agency' means the Government of the United States; the government of a State or political subdivision thereof . . . .").

set of protections to government employees. S. REP. NO. 93-690, at 1 (1974) (emphasis added). While the original FLSA had been narrower in various ways—including by not protecting government employees—the "goal of the amendments embodied in" the 1974 legislation was "to continue the task initiated in 1961—and further implemented in 1966 and 1972—to extend the basic protection of the Fair Labor Standards Act to additional workers and to reduce to the extent practicable at this time the remaining exemptions" to coverage. *Id.* at 7.

The purpose of the 1974 amendments was thus to fill "gaps" in the FLSA's prior coverage, extending that to cover "additional workers" in government. *Id.* at 16 ("The Committee reviewed present coverage, as well as the gaps therein, and determined that a strong need exists for covering . . . additional workers . . . in government."). Accordingly, "[t]he Committee intends that government apply to itself the same standards it applies to private employers." *Id.* at 24. Prior House debate on a predecessor version of the bill echoed similar reasoning:

> Government, at whatever level, should not be exempt from provisions of the law which apply to private sector employers. Employees should not be subjected to discrimination because they happen to work for government rather than for a private sector employer.

119 CONG. REC. 18,159 (1973) (statement of Rep. Barbara Jordan). Thus, both the text and legislative history of the EPA indicate that it should apply equally to government and private employers.

## B

However, the government relies on two statutes, 5 U.S.C. § 5333 and 38 U.S.C. § 7408 as supporting a different conclusion. Section 5333 is entitled "Minimum rate for new appointments" and addresses the general pay-

setting authority for government employees. The statute authorizes a departure from the minimum rate of the appropriate grade for new appointments "under regulations prescribed by the Office of Personal Management which provide for such considerations as the existing pay" of the candidate, among other qualities. 5 U.S.C. § 5333. Similarly, 38 U.S.C. § 7408, a statute that addresses appointment of some employees within the Veteran's Health Administration, authorizes a departure from the minimum pay rate of the appropriate grade for new appointments "after considering an individual's existing pay, higher or unique qualifications, or the special needs of the Department." While these statutes do not apply to Dr. Boyer, the VA Handbook, which does apply, contemplates consideration of prior pay, *see* VA Handbook 5005, Part II, Chapter 3 (Dec. 6, 2007), and the government argues that the same rules must apply to all federal employees, a proposition with which we agree.

In light of these statutes, the government contends that the middle ground that we have found generally applicable to employees outside the federal government should not apply to the federal workforce. In other words, that the federal pay-setting statutes should be read to cabin the EPA as it applies to the federal workforce. We do not agree.

When, as here, "two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *Highland Falls-Ft. Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1171 (Fed. Cir. 1995); *see also Van Dermark v. McDonough*, 57 F.4th 1374, 1386 (Fed. Cir. 2023). Thus, statutes that appear to be in conflict should be construed if possible to reconcile the two. *United States v. Borden Co.*, 308 U.S. 188, 198 (1939); *Morton*, 417 U.S. at 551. Here, the Equal Pay Act and the government pay-setting statutes are capable of co-existence. The pay-

setting statutes allow consideration of prior pay. The EPA allows consideration of prior pay if prior pay is not sex-based and also allows consideration of prior pay with another factor. This reconciliation renders the statutes not inconsistent and is fully consistent with the Congressional design.

First, as discussed earlier, the principle of the 1974 amendments to the Fair Labor Standards Act, expanding the EPA to federal employees, is that the same rules ought to apply to both government and private employees. *See* S. REP. NO. 93-690, at 24 (1974) ("The Committee intends that government apply to itself the same standards it applies to private employers."); *see also* S. REP. NO. 92-842, at 18 (1972) ("Many arguments have been advanced for bringing public employees under the [Fair Labor Standards Act]. A major argument was and continues to be a moral one. Government should be willing to apply to itself any standard it deems necessary to apply to private employment."). The government offers no plausible reason as to why Congress would want to apply different standards to government and the private sector. It fails to demonstrate that Congress wished to apply differential standards. It would take fairly explicit statutory language to indicate that Congress intended to depart from this general principle. No such language appears in either 5 U.S.C. § 5333 (which was first enacted before the EPA applied to federal employees) or 38 U.S.C. § 7408 (enacted after the EPA). The two statutes that the government relies on simply do not address issues relating to the EPA.

Second, both pay-setting statutes are permissive, not mandatory. Both statutes include lists of factors that the government "may" consider when setting a new appointment's salary above the minimum rate. *See* 5 U.S.C. § 5333 ("[U]nder regulations prescribed by the Office of Personnel Management which provide for such considerations as the existing pay or unusually high or unique qualifications of the candidate, or a special need of the

Government for his services, the head of an agency *may* appoint . . . an individual to a position at such a rate above the minimum rate of the appropriate grade . . . ." (emphasis added)); 38 U.S.C. § 7408(b) ("The Secretary, after considering an individual's existing pay, higher or unique qualifications, or the special needs of the Department, *may* appoint the individual . . . at a rate of pay above the minimum rate . . . ." (emphasis added)). Prior pay, existing salary, and salary history are listed among the factors that "may" be used, but the statutes do not *require* that the government consider prior pay at all—much less do they require that that the government consider prior pay exclusively. *See Biden v. Texas*, 597 U.S. 785, 802 (2022) ("The statute says 'may.' And 'may' does not just suggest discretion, it '*clearly* connotes' it.") (quoting *Opati v. Republic of Sudan*, 590 U.S. 418, 428 (2020)); *see also* Off. of Personnel Mgmt., *Fact Sheet: Superior Qualifications and Special Needs Pay-Setting Authority*, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/superior-qualifications-and-special-needs-pay-setting-authority/ ("Existing salary, recent salary history, or a competing salary offer is only one of a number of factors that may be used to determine an employee's step rate." (emphasis omitted)). Nor does the disjunctive use of "or" in 5 U.S.C § 5333 and 38 U.S.C. § 7408 impose any such requirement. The presence of the word "or" does not convert broad discretion to consider a flexible list of factors into a command to consider each of the listed factors.

Third, even though our reading of the EPA would, to a limited extent, cabin the discretion that federal employers would otherwise have under the pay-setting statute, no Congressional policy will be defeated by construing those statutes not to authorize actions that would be in violation of another statute. In particular, there is no indication that Congress in enacting the pay-setting statutes considered the possibility that relying on prior compensation would

perpetuate discrimination. There is certainly no indication there is any statutory policy embodied in the pay-setting statutes that would be undermined by applying EPA policies or barring consideration of prior pay standing alone (where there is no showing that the prior pay is not based on sex). "Here[,] the basic purposes" of the government pay-setting statutes "can be fairly served by giving full effect" to the EPA. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (construing venue authorization statute not to apply to national banks in light of another venue statute specifically applicable to national banks).

In short, the pay-setting statutes simply authorize taking into account certain considerations in hiring. They do not require such consideration. They are easily construed to only authorize consideration of prior pay if such consideration is not contrary to another statute, here the EPA. There is nothing in the pay-setting statutes that is remotely designed to allow agencies to engage in discriminatory practices in hiring. The Claims Court erred in holding that the government in hiring may consider prior pay standing alone as a factor other than sex, unless the government can also prove that the prior pay was not itself based on sex.

## IV

Dr. Boyer argues that we should reverse and require an award to Dr. Boyer without remanding for further proceedings. The Claims Court held that under Dr. Boyer's legal theory (which we now adopt), genuine issues of material fact remained. We see no error in that determination.

Dr. Boyer asserts that the record indisputably shows that the BVAMC relied on prior pay alone when creating a wage disparity between herself and the male comparator. But there is evidence both ways as to whether prior pay alone was the deciding factor.

The selecting official, Monica Sfakianos, testified to the fact that she "boarded everybody exactly the same without regards to anything special other than their current pay stubs." J.A. 260 (7:18–20). Other members of the Veterans Integrated Service Networks 7 Pharmacy Professional Standards Board gave similar testimony. *See* J.A. 279 (4:15–17) (Kendra Brookshire testifying "at the end of the day pay stubs can basically trump what would be determined by the qualifying experience"); J.A. 271 (6:08–09) (Lisa Ambrose testifying that what a candidate is currently being paid is "the biggest factor that we always took into consideration").

But there is evidence that other factors went into the decision to set Dr. Boyer and the male comparator's pay. When emailing with Dr. Boyer at the time of her hiring, the selecting official, Ms. Sfakianos, told Dr. Boyer that salary could be "based on education, residency, published articles" in addition to salary matching. J.A. 130. Similarly, in the same deposition where Dr. Ambrose acknowledged that pay stubs are "the biggest factor," she also explained that salary setting was "an algorithm" that took several factors, including years of service and publications, into account. J.A. 269.

If, on remand, the Claims Court determines that a bona fide business reason other than prior pay played a role in the differential, an important part of the Claims Court's task will be to explain in detail how prior pay together with another bona fide business reason explains the differential. In other words, the Claims Court would need to find that the BVAMC actually relied on specific differences in experience or credentials that were material to the work being performed by Dr. Boyer and the male comparator. Alternatively, if, on remand, the Claims Court determines that BVAMC relied on prior pay alone, the government should be provided an opportunity to attempt to prove that the prior pay on which BVAMC relied was not itself based on sex.

Because the Claims Court erred in its construction of the EPA, and there are genuine disputes of material fact as to whether the BVAMC relied on prior pay alone to justify the pay differential between Dr. Boyer's and the male comparator's salaries, we reverse the grant of summary judgment and remand to the Claims Court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

Costs to appellants.