# United States Court of Appeals for the Federal Circuit

---

**LESLIE BOYER,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1822

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00438-ZNS, Judge Zachary N. Somers.

---

**SUA SPONTE REQUEST FOR REHEARING EN BANC**

---

LACHLAN W. SMITH, The Kress Building, Wiggins Childs Pantazis Fisher & Goldfarb LLC, Birmingham, AL, for plaintiff-appellant. Also represented by JON C. GOLDFARB.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

DEBRA D'AGOSTINO, The Federal Practice Group, for

amici curiae A Better Balance, American Medical Women's Association, California Women Lawyers, California Women's Law Center, Center for Women's Health & Human Rights, Suffolk University, Chicago Foundation for Women, Clearinghouse on Women's Issues, Desiree Alliance, Equal Rights Advocates, Faith Action for All, Feminist Majority Foundation, Hadassah, the Women's Zionist Organization of America, Human Rights Campaign, If/When/How: Lawyering for Reproductive Justice, In Our Own Voice: National Black Women's Reproductive Justice Agenda, In the Public Interest, Indiana Community Action Poverty Institute, International Action Network for Gender Equity & Law, Lawyers Club of San Diego, Legal Aid at Work, Legal Momentum, the Women's Legal Defense and Education Fund, NARAL Pro-Choice America, National Asian Pacific American Women's Forum, National Association of Women Lawyers, National Coalition on Black Civic Participation, National Consumers League, National Crittenton, National Employment Lawyers Association, National Health Care for the Homeless Council, National LGBTQ Task Force, National Women's Law Center, National Womens Political Caucus, Queen's Bench Bar Association of the San Francisco Bay Area, Religious Coalition for Reproductive Choice, Reproaction, Service Employees International Union, Shriver Center on Poverty Law, SisterReach, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Women Employed, Women Lawyers On Guard Inc., Women's Bar Association of the District of Columbia, Women's Bar Association of the State of New York, Women's Institute for Freedom of the Press, Women's Law Center of Maryland, Women's Law Project, Women's Media Center. Also represented by JANEI AU; GAYLYNN BURROUGHS, SUNU CHANDY, PHOEBE WOLFE, National Women's Law Center.

______________________

Before MOORE, *Chief Judge*, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.[1]

MOORE, *Chief Judge*, LOURIE, PROST, and TARANTO, *Circuit Judges*, dissent from the denial of the sua sponte request for rehearing en banc.

PER CURIAM.

**O R D E R**

This case was argued before a panel of three judges on November 9, 2023, and a precedential opinion issued on March 26, 2024. A sua sponte request for a poll on whether to consider this case en banc was made. A poll was conducted, and the poll failed.

Accordingly,

IT IS ORDERED THAT:

The request for rehearing en banc is denied.

FOR THE COURT

Jarrett B. Perlow
Clerk of Court

April 11, 2024
Date

[1] Circuit Judge Newman did not participate.

# United States Court of Appeals for the Federal Circuit

---

**LESLIE BOYER,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1822

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00438-ZNS, Judge Zachary N. Somers.

---

MOORE, *Chief Judge*, LOURIE, PROST, and TARANTO, *Circuit Judges*, dissenting from the denial of the sua sponte request for rehearing en banc.

This case raises a pure legal issue of statutory interpretation: Does the Equal Pay Act provision "factor other than sex" permit consideration of prior pay when setting an employee's salary—as has been expressly authorized by Federal statute and regulation for Federal government employment for more than 50 years? There can be no doubt that this is an important question worthy of *en banc* consideration. It is a purely legal issue, there is a three-way circuit split (outside the Federal employee context), and there are serious concerns about the merits of the panel decision and its practical implications. The Federal government is the nation's largest employer, with over 1.5

million General Schedule (GS) employees. The panel decision creates an immediate claim for a large number of Federal employees, enormous liability for the government, and an unworkable investigative standard, and it calls into question the validity of OPM's new regulations addressing the use of prior pay in salary setting. We look forward to briefing at the *en banc* stage to help flesh out these issues.

## I. CONCERNS WITH THE PANEL'S STATUTORY CONSTRUCTION

This case is about whether the Equal Pay Act (EPA) enacted in 1963, 29 U.S.C. § 206(d)(1), which permits differential same-job pay among the sexes if it is "based on any other factor other than sex," makes the current and past Federal hiring practice of basing salary decisions on past salary illegal. The EPA itself says nothing explicitly about prior pay. But the language and governing precedents provide a structure for analysis of such a basis for setting individual employees' pay—a structure under which the longstanding Federal practices are lawful.

The EPA generally prohibits covered employers from paying different wages to opposite-sex employees for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). We will call this the prohibitory clause and use the phrase "same-job" as a shorthand for the longer phrase just quoted. But the statute contains an exception clause—the prohibition applies "except where such payment is made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

To bring a case under the EPA, a plaintiff makes out a prima facie case by "show[ing] that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill,

effort, and responsibility, and which are performed under similar working conditions." *Moore v. United States*, 66 F.4th 991, 997 (Fed. Cir. 2023) (*en banc* in relevant part) (internal quotation marks omitted). It is then the employer's burden to prove—as an affirmative defense—one of the EPA's four permissible non-sex-based justifications for paying different sexes differently for equal work. *See id.* at 996; *Corning Glass Works v. Brennan*, 417 U.S. 188, 195–96 (1974). In this case, the dispute is about what has been called the "broad catch-all factor" in the exception clause—permitting a pay differential "based on any other factor other than sex." *Taylor v. White*, 321 F.3d 710, 717–18 (8th Cir. 2003); *see County of Washington v. Gunther*, 452 U.S. 161, 170 & n.11 (1981) (describing intended breadth of this exception).

The inquiry under the prohibitory clause turns on an objective comparison of employees' pay once the same-job standard is met, without further inquiry into the basis of the disparity in pay between the sexes. *Moore*, 66 F.4th at 996; *see Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007) (mentioning EPA in case involving Title VII of the Civil Rights Act of 1964).[1] The prohibitory clause gives a specific test for declaring certain pay differences to be presumptively based on sex discrimination. The last of the four exceptions in the exception-clause defense is different. It turns on the reason for the employer's pay practices, as "based on" language often does. *See Moore*, 66 F.4th at 996 (rejecting "based on" standard for the prohibitory clause, explaining: "Having to prove—*on top* of a pay differential across sexes for equal work—that the different is 'based on' sex is tantamount to having to prove that it's

[1] The *Ledbetter* ruling regarding Title VII was superseded by the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009), which did not alter the EPA or the Court's description of the EPA in *Ledbetter*.

*because* of sex, which is *tantamount to having to prove intentional discrimination*.") (last emphasis added).

If the employer expressly uses sex as a pay determinant, the EPA's fourth exception has been held to be inapplicable, because the express policy establishes sex as the reason, even if there is some real-world correlation between sex and a non-sex fact (such as life expectancy). *See City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 711–14 (1978) (finding EPA exception—incorporated into § 703(h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(h)—inapplicable where employer required female employees to make larger contributions to the pension fund than male employees, based on group difference in life expectancy); *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1079–86 (1983) (applying *Manhart* to differential payout from retirement plans).

In contrast, where an employer's policy on its face makes *no* reference to sex, but uses a fact other than sex to make the pay decision, the required inquiry is an inquiry into the employer's intent. This is a common meaning of "based on" language, as reflected in the quote from *Moore* above, and it is the meaning Supreme Court case law has used for this exception in the EPA. The Supreme Court in *Corning Glass*, faced with a policy of paying more for night-shift inspection work, and noting that night work may carry special burdens, said the question was whether the higher pay "was in fact intended to serve as compensation for night work, or rather constituted an added payment based upon sex." 417 U.S. at 204.[2] The Court in *Manhart*

---

[2] The Court affirmed the trial court's finding that the Corning Glass policy originated from sex discrimination, which became illegal upon the enactment of the EPA in 1963, and had not been adequately remedied afterwards. *Id.* at 205–10.

discussed whether the exception applied in terms of whether "any factor other than the employee's sex was taken into account" by the employer. 435 U.S. at 712. And the usual alternative to a facial-content-or-intent standard—a "disparate impact" standard—the Supreme Court has said does *not* apply to this EPA exception. *See Smith v. City of Jackson*, 544 U.S. 228, 239 n.11 (2005) (in addressing Age Discrimination in Employment Act, stating: "if Congress intended to prohibit all disparate-impact claims, it certainly could have done so. For instance, in the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), Congress barred recovery if a pay differential was based 'on any other factor'—reasonable or unreasonable—'other than sex.'").

That this intent standard, rather than a standard looking to differential impact (due, *e.g.*, to past practices), is appropriate for the last exception in the exception clause of the EPA is confirmed by the rest of the clause. The first of the exceptions is for "a seniority system." Congress must have recognized, in 1963, that such a system would, for many employers, have a highly disparate impact on the sexes. *See Equal Pay for Equal Work: Hearings on H.R. 8898 and H.R. 10226 Before the Select Subcomm. on Lab. of the H. Comm. on Educ. and Lab.*, 87th Cong. 165 (1962); *see also Equal Pay Act of 1962: Hearing on S. 2494 and H.R. 11677 Before the Subcomm. on Lab. of the S. Comm. on Lab. and Pub. Welfare*, 87th Cong. 65 (1962). Yet Congress provided expressly that seniority was a basis for pay differentials that was exempt from the EPA prohibition. The kind of impact standard on which the majority here relies is out of keeping with that congressional choice. Indeed, the last exception's language, "any *other* factor other than sex" (emphasis added), implies that Congress considered seniority itself, despite its disparate impact on the

sexes, to be a "factor other than sex." That judgment, embodied in the text, should govern the last exception.[3]

The government's position in this case is that its longstanding statutory and regulatory policy of basing a salary decision on prior pay—giving a higher-than-minimal "step" within a grade, based on an applicant's prior pay—falls within the last exception of the exception clause of the EPA. Under the approach just described, once the government asserted the affirmative defense of prior pay as a "factor other than sex," a plaintiff was free to assert that the government policy was a pretext—that the use of prior pay, despite its facial neutrality, actually rested on an intent to discriminate between the sexes. *See, e.g.*,

---

[3] An analogy to the constitutional equal protection standard may be apt. The Supreme Court long ago held that discriminatory purpose, which is the constitutional standard, "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation omitted). And based on that standard, the Court, in agreement with the United States, rejected an equal protection challenge to a State's granting of hiring preferences to veterans (whether they were men or women)—a policy that is neutral on its face and has a legitimate sex-neutral basis, and was found not to have had "the purpose of giving an advantage to males as such," *id.* at 277—notwithstanding the evident disparate impact on the sexes and the recognition that "[t]he enlistment policies of the Armed Services may well have discriminat[ed] on the basis of sex." *Id.* at 278; *see* Brief for the United States as Amicus Curiae, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) (No. 78-233), 1978 WL 207300.

*Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (citing *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999)). If, in response, the government was able to show that its real reason was actually the sex-neutral reason for considering the prior pay of the applicant, such as being able to match that prior pay in order to increase the chance that an applicant who is offered a job would take it, the inquiry would end.

The panel decision instead declares that prior pay is often a "proxy" for sex discrimination. Op. at 13. This "proxy" notion seems to be a disparate-impact concept that is contrary to the case law set forth above. To the extent it means pretext, in the proper intent sense, it does not focus on the right question—why the Federal government has chosen to use prior pay (for 50+ years)—but instead focuses on general societal practices.

In any event, the panel's citations offered to support its presumption of sex discrimination do not provide such support. The panel's statutory construction begins, and ends, with its conclusion that "empirical premises recognize the simple fact that prior pay can be—and frequently is—a proxy for the sex of the worker."[4] Op. at 13. The empirical studies relied upon by the panel were not discussed by the parties and are not tailored to the EPA question at issue. The EPA addresses "the principle of equal pay for equal

---

[4] The panel decision, in concluding that prior pay is a proxy for sex and the product of sex discrimination, goes further than OPM's study of the question. In its new rulemaking, OPM concluded that it was eliminating consideration of prior nonfederal pay because it "may contain or exacerbate biases inconsistent with merit system principles." Advancing Pay Equity in Governmentwide Pay Systems, 89 Fed. Reg. 5737 (Jan. 30, 2024) (this "may contain or exacerbate" finding is repeated throughout).

work regardless of sex," *Corning Glass*, 417 U.S. at 190, *i.e.*, equal pay under the same-job limitations specified in the statute. But the studies do not. The studies compare all working women to all working men without controlling for occupation or job type.[5] These generalizations are not sufficient to justify the panel's conclusion that more than half a century of government hiring practices have been in violation of the EPA.

In concluding that pay disparities are a proxy for sex discrimination, the panel never meaningfully wrestles with the statutory and regulatory evolution of the use of prior pay in salary setting. This is the analysis which ought to govern the statutory construction inquiry. The EPA was enacted in 1963. Just three years later, Congress enacted 5 U.S.C. § 5333, which authorized OPM (the Civil Service Commission at the time) to prescribe regulations and expressly permitted OPM to use *existing pay* as a basis for assessing salary when hiring Federal employees. 5 U.S.C. § 5333 ("under regulations prescribed by [OPM] which

---

[5] Amanda Barroso & Anna Brown, *Gender Pay Gap in U.S. Held Steady in 2020*, Pew Research Ctr. (May 25, 2021), https://www.pewresearch.org/fact-tank/2021/05/25/gender-pay-gap-facts/) (discussing the difference in median hourly earnings between men and women who work full or part time in the United States); Nat'l Women's L. Ctr., *NWLC Resources on Poverty, Income, and Health Insurance in 2021* (Sept. 13, 2022), https://nwlc.org/resource/nwlc-resources-on-poverty-income-and-health-insurance/ (discussing difference in earnings from men and women working full time); Jessica Semega & Melissa Kollar, *Income in the United States: 2021*, U.S. Census Bureau, Current Population Reports, at Table A-7 (Sept. 2022), https://www.census.gov/content/dam/Census/library/publications/2022/demo/p60-276.pdf (same).

provide for such considerations as *the existing pay* . . . the head of an agency may appoint. . . an individual to a position at such a rate above the minimum rate of the appropriate grade as the Office may authorize for this purpose.") (emphasis added). OPM regulations have since that time expressly permitted *prior pay alone* to be the basis for a salary determination: "An agency may consider *one or more* of the following factors . . . (2) The candidate's *existing salary, recent salary history, or salary documented in a competing job offer* . . . ." 5 C.F.R. § 531.212(c) (emphasis added).[6]

Although the EPA was not extended to cover Federal employees until 1974, as the trial court observed, "one would be hard-pressed to argue that in the immediate wake of its passage of the EPA, Congress via § 5333, enshrined in the primary federal pay statute a policy that would be facially discriminatory under the EPA if it had applied to federal employees at the time."[7] *Boyer v. United States*, 159 Fed. Cl. 387, 408 (2022). The panel suggests that the statutes and implementing regulations do not conflict with its interpretation of the EPA because they do not *require* the use of prior pay alone. Op. at 22. This reading of § 5333, however, fails to appreciate that the provision doesn't just say that prior pay *may* be considered; it clearly says that prior pay may be considered *alone* through the

---

[6] *See also* 38 U.S.C. § 7408; Dep't of Def., Instruction 1400.25, Volume 531, DoD Civilian Personnel Management System: Pay Under the General Schedule, at § 3.1 (Jan. 31, 2020); Veterans Admin., VA Handbook 5007, Pay Administration, at ch. 3 § 3(b) (July 6, 2011).

[7] The panel correctly notes that there is a three-way circuit split on this legal issue. None of the circuits considered the significance of § 5333 for a proper statutory construction of the EPA because those cases did not involve Federal government employers.

use of the disjunctive "or." OPM's regulation implementing § 5333 is just as explicit in allowing the use of prior pay *alone*. OPM, exercising the authority expressly delegated by Congress for sixty years, allowed salary setting on the basis of prior pay alone. 5 C.F.R. § 531.212(c). Notably, even after Congress extended the EPA to Federal employees, it made no changes to the pay language in § 5333. This history should defeat any argument for pretext as a matter of law: a Congress adopting the prior pay policy (with its evident, legitimate non-sex-based justification), having condemned the sex discrimination covered by the EPA, cannot plausibly be found to have been really seeking to produce that very discrimination in government offices.

The panel's statutory analysis fails to meaningfully reconcile how the nearly simultaneous enactment of the EPA and § 5333 and the longtime OPM rules permitting consideration of prior pay alone nonetheless led to the conclusion that Congress intended to preclude consideration of prior pay in salary setting and thereby call into question both past and future Federal hiring. The panel's interpretation, as the government put it, requires "implicit partial repeal of at least two Federal statutes and an OPM promulgating regulation (affecting *millions* of Federal employees over decades)." Gov. Br. at 33. "[T]he more natural reading, and the one that harmonizes the two statutes, is to conclude that existing pay alone—at least for purposes of the Federal pay system—is a factor other than sex." *Boyer*, 159 Fed. Cl. at 409.

## II. THE GOVERNMENT'S NEW IMPOSSIBLE BURDEN

The panel concludes that Federal employers cannot rely upon prior pay because it is frequently infected by sex discrimination and therefore is not a factor other than sex in salary setting unless either of two circumstances is proven to be present. First, prior pay can be utilized in the salary setting process so long as at least one additional factor was also considered (the Plus One circumstance).

Second, prior pay can be relied upon if the government proves that the prior pay was itself not infected by sex discrimination (Impossible Burden). Both criteria raise serious concerns.

## A. Prior Pay Plus One

After stating that prior pay "frequently is" a proxy for sex discrimination, and thus relying on prior pay alone as an affirmative defense to the EPA "risks thwarting the Act's most fundamental goal—equal pay for equal work," Op. at 13, the panel pivots and says prior pay can be the basis for pay setting as long as at least one additional factor was also considered.[8] But the panel does not explain how, if prior pay is so frequently tainted by sex discrimination, combining it with some other consideration transforms it into a sex-neutral factor.[9] Nor does the panel provide any analysis regarding the weight it believes it is appropriate for the Federal government to assign to prior pay versus the Plus One factor. Since the panel starts with a presumption about prior pay being a proxy or pretext for sex discrimination, it is hard to imagine how adding a second factor will somehow purge the discrimination. The panel's job is to construe the statute to determine Congressional intent, not to make policy determinations about Federal hiring practices. We question the legitimacy of the Plus One escape valve from the panel's presumptive EPA

---

[8] The panel requires a showing that this other factor was "<u>in fact</u> the basis for the decision," and "evidence that the nondiscriminatory reason *actually* motivated the decision to set unequal pay." Op. at 14–15 (emphasis in original).

[9] *Cf. Feeney*, 442 U.S. at 277 ("Discriminatory intent is simply not amenable to calibration. It either is a factor that has influenced the legislative choice or it is not.").

violation when the government has relied on prior pay in pay setting.

B. Prior Pay Alone (Impossible Burden)

The panel alternatively holds that prior pay is a factor other than sex (and therefore its use does not violate the EPA) if the government can prove that an applicant's prior pay was not based on sex.[10] For a Federal employee whose salary was set on the basis of prior pay alone (and it was legal to do so for roughly sixty years), the government must now prove that when that employee was hired either from a private entity or from another government entity, their salary at that separate entity was not based on sex. This is quite frankly an impossible task. How can a government entity gain access to a prior employer's pay practices in order to prove that the prior employer's salary setting at some point in the past was not based on sex? OPM itself explains that it cannot acquire third party hiring data in order to meet such a burden: "Agencies do not typically have access to the information that a previous non-Federal employer used to determine a job candidate's salary." Advancing Pay Equity, 89 Fed. Reg. at 5742.

The task is not much easier for Federal agency-to-agency hires. For example, if the Veterans Administration (VA) previously hired an employee from the Department of Defense (DOD) and relied upon the DOD salary to set the VA salary, as law expressly permitted, the VA has to prove that when DOD hired the person and set their salary it was not infected somehow by the sex of the individual. This

---

[10] The panel requires the employer to "prove" this fact as part of their affirmative defense. Op. at 16. The panel does not elaborate on what constitutes proof, but "leave[s] for future cases to consider what evidentiary showing is needed to carry this burden." *Id.* at 15.

would require the VA to obtain hiring data from DOD related to this and similarly situated hires to ascertain whether there was a disparity in pay between the sexes in the DOD pay setting. How is one Federal agency supposed to acquire the salary setting details of a different Federal agency from some past time? And since it is likely that the Federal employee came from the private (or other non-Federal) sector before entering Federal service, and Federal pay scales are lock-stepped and structured, how far back does the search have to go?

The government has been permitted, by statute and regulation, to consider prior pay alone in setting pay for over half a century. The panel's decision, which creates a presumption that prior pay is a proxy for sex discrimination, likely renders illegal the pay of "*millions* of Federal employees over the decades." Gov. Br. at 33. Given the investigative impossibility the panel has required to overcome its findings about prior pay, it is effectively illegal to have used prior pay in setting salary in Federal hires.

## III. SERIOUS IMPACT OF THE PANEL DECISION

### A. Enormous Liability

This decision creates an immediate potential claim for an untold number of the 1.5 million current Federal GS employees, and it will undermine OPM's new regulation that went into effect on April 1, 2024. From all we can tell at this point, this will have a huge impact on the Federal workforce—creating enormous liability for past pay setting decisions and confusion over future practices. These results alone warrant review by the *en banc* court.

The panel opinion creates the potential for massive liability for past wages by the Federal government. The Federal government has long used prior pay alone (as the law allowed for the last sixty years), to set the salary of incoming employees within a grade. In holding those pay setting decisions to violate the EPA, the panel opinion creates a

potential claim for a vast swath of Federal employees. For example, suppose a man was hired ten years ago and he was given an elevated step within a grade on the basis of prior pay alone (which the statute and regulations expressly permitted).[11] Now suppose it is discovered that his salary throughout that time and even now is higher than his female co-workers. At least after backing out differences due simply to seniority, every one of those female co-workers could have an immediate claim against the government. The result would be two years of backpay and a right to be moved immediately to a higher step and pay for the remainder of their careers. The EPA commands that the cure for an unequal-pay violation be the raising, not lowering, of pay.[12] And it does not stop there. The EPA applies to both men and women. *Moore*, 66 F.4th at 992. If there is a woman in an office who is paid more than her male counterparts, the male co-workers could bring the same lawsuit—and they too would receive back pay and an immediate salary raise. The resulting liability for both back and future pay is enormous. And again, under the panel's decision, the government will have no realistic means by which to justify its longstanding use of prior pay.

---

[11] The panel opinion suggests the government could show his prior pay was not based on sex, but as discussed, this investigative task is so impractical that the bar is all but absolute.

[12] 29 U.S.C. § 206(d)(1) ("an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee"); *Corning Glass*, 417 U.S. at 207 ("The purpose of this proviso was to ensure that to remedy violations of the Act, '(t)he lower wage rate must be increased to the level of the higher.'" (internal citation omitted)).

B. The Panel Decision Renders OPM's Rulemaking Illegal and Unworkable

Over the last year, OPM, using the discretion given to it by Congress, changed its rule regarding whether prior pay can be used for salary setting. OPM's new rule, which is prospective only and not a condemnation of OPM's own past hiring practices, is that agencies "cannot consider a candidate's non-Federal pay history." Advancing Pay Equity, 89 Fed. Reg. at 5738. The rule took effect April 1, 2024. Now, prior non-Federal pay cannot be considered in the salary setting of new Federal employees. OPM explained, "salary history is not necessarily a good indicator of worker value, experience, and expertise, and it also may contain or exacerbate biases." *Id.* at 5737. However, OPM expressly permits the consideration of prior Federal pay. *Id.* OPM explains that the "GS system has standardized pay-setting rules that help promote the equitable treatment among employees . . . Because structured pay systems minimize discriminatory influence on pay setting, OPM is not banning consideration of prior Federal pay when setting pay but is requiring agencies to establish policies that further promote equity in pay setting." *Id.* at 5740.

The panel's determination that salary setting cannot be based on prior pay (unless the government proves that the prior salary was not based on sex) applies equally to both prior non-Federal (including private and state government) pay and prior Federal pay. Under the panel's interpretation of the EPA, this new rulemaking, and hiring under it, are subject to challenge for perpetuation of a practice the panel has determined violates the EPA.

CONCLUSION

This case involves an important legal issue and a highly consequential resolution by the panel. For at least the reasons set forth, the resolution raises very serious concerns on the merits. In the circumstances of this case, this

request for sua sponte *en banc* action and its rejection should not be construed as suggesting that a further request for *en banc* consideration by the government accompanied by its views on these consequential and important issues would not receive the court's full and careful consideration.